## State of Vermont v. Douglas Russell Pike

[465 A.2d 1348]

No. 278-80

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed September 1, 1983

---

*John J. Easton, Jr.*, Attorney General, *Susan R. Harritt*, Assistant Attorney General, and *Stephen J. Craddock*, Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Brian J. Grearson*, Barre, for Defendant-Appellant.

**Underwood, J.** Defendant was convicted by a district court jury of hindering a state game warden in the lawful execution of his duties, 13 V.S.A. § 3001, and of recklessly endangering a warden by aiming and discharging a firearm in his direction, 13 V.S.A. § 1025. He appeals on eight separate grounds. Five of his arguments were not raised below. Therefore, he is precluded from raising them on appeal. See *State v. Billado*, 141 Vt. 175, 188, 446 A.2d 778, 782 (1982); *State v. Durling*, 140 Vt. 491, 496, 442 A.2d 455, 458 (1981); *State v. Patnaude*, 140 Vt. 361, 368, 438 A.2d 402, 404 (1981). His remaining three arguments are that: (1) the wardens were not in lawful exercise of their duties at the time of the alleged offenses; (2) the instructions given by the court concerning the authority of the wardens to search and the legality of the search were incomplete; and (3) the court should have granted a mistrial on the ground that the state's attorney inquired into a witness' knowledge of a pretrial ruling concerning the legality of the search. We disagree with all of defendant's contentions and affirm.

Briefly stated, the facts are as follows. In the early morning hours of November 22, 1979, a farmer in West Newbury, Vermont, called the state police to report that he had heard gunshots and seen lights in a field near his farm. Immediately thereafter, two state game wardens were sent out to investigate a possible deer jacking incident. After arriving on the scene, the wardens discovered a pool of blood and deer hair just off the town road. Near the pool of blood the wardens found a set of tire tracks heading north on the town road.

The wardens got into their cruiser and followed these tracks approximately 1.3 miles, where the tracks turned left into the

residence of the defendant's father. The wardens pulled into the driveway and parked in back of a Vega automobile which was parked about 30 feet from defendant's father's mobile home. They got out of their cruiser and walked up to the passenger side of the Vega, looked inside, and saw blood and deer hair. The wardens then followed a distinct trail of blood from the Vega to an old Ford pick-up. Inside the truck, they viewed a freshly killed deer. They removed it from the truck. After doing so, the wardens heard the door of the trailer fly open and saw defendant emerge from the trailer with a revolver in his hand. He pointed the gun at one of the wardens and demanded to be informed who was there. The wardens identified themselves. Defendant told them that if they did not have a warrant to leave. One of the wardens advised him they did not need one, since everything was in plain view.

Following a discussion with defendant and his father, the wardens asked the former to get into the cruiser and answer some questions. He refused. Defendant then walked up to the trailer porch, drew his revolver, pointed it at one of the wardens, and fired a shot in the air over the top of the warden's head. The wardens then left the property to await the arrival of the state police.

Defendant was charged with violating 13 V.S.A. §§ 1025 and 3001. He moved to dismiss the charges on the grounds that the warrantless search was unlawful and outside the sphere of the officers' lawful execution of duty. The court denied the motion, ruling that the wardens were lawfully on the premises, and that the plain view doctrine justified the warrantless search and seizure. The case then went to trial, and defendant was convicted on both counts.

## I.

The defendant first argues that the game wardens were not in lawful exercise of their duties at the time of the offense. Therefore, he maintains that he cannot be found guilty of hindering an officer in the lawful execution of his duties, nor of recklessly endangering another person since he had a right to resist the illegal search by firing a warning shot over the warden's head. Specifically, defendant contends that the "plain view" exception to the warrant requirement, as set out by the

United States Supreme Court in *Coolidge* v. *New Hampshire*, 403 U.S. 443, 468 (1971), is not applicable in this instance because the wardens' initial entrance into the driveway was not lawful.

■ Defendant is correct in stating that for evidence in plain view to be seized without a warrant, as was the deer carcass in the instant case, there must be a prior lawful intrusion. *Texas* v. *Brown*, 103 S. Ct. 1535 (1983). He is incorrect, however, when he states that the wardens in the instant case were not lawfully on the driveway when they observed the dead deer.

■ Under *Katz* v. *United States*, 389 U.S. 347 (1967), the Fourth Amendment no longer calls for a rigid application of the law of trespass. Real property concepts have relinquished their hold on the Fourth Amendment to the *Katz* doctrine, which guarantees reasonably held expectations of privacy. As the United States Court of Appeals, Ninth Circuit, stated: "a reasonable expectation of privacy, and not common-law property distinctions, now controls the scope of the Fourth Amendment." *United States* v. *Magana*, 512 F.2d 1169, 1170 (9th Cir. 1975). Thus, the proper inquiry is whether the wardens' entrance into the residential property by way of the driveway constituted an intrusion into "what the resident seeks to preserve as private even in an area which, although adjacent to his home, is accessible to the public." *Wattenburg* v. *United States*, 388 F.2d 853, 857 (9th Cir. 1968).

■ A driveway, as that portion of the curtilage which is the normal route of access for anyone visiting the premises, is only a "semiprivate area." *United States* v. *Magana, supra*, 512 F.2d at 1171. As elaborated in *State* v. *Corbett*, 15 Or. App. 470, 475, 516 P.2d 487, 490 (1973) (citation and footnote omitted):

> People commonly have different expectations, whether considered or not, for the access areas of their premises than they do for more secluded areas. Thus, we do not place things of a private nature on our front porches that we may very well entrust to the seclusion of a backyard, patio or deck. In the course of urban life, we have come to

expect various members of the public to enter upon such a driveway, e.g., brush salesmen, newspaper boys, postmen, Girl Scout cookie sellers, distressed motorists, neighbors, friends. Any one of them may be reasonably expected to report observations of criminal activity to the police . . . . If one has a reasonable expectation that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so.

Thus, when state officials come onto private property to conduct an investigation and restrict their movements to driveways which visitors could be expected to use, observations made from such vantage points are not covered by the Fourth Amendment. See *United States* v. *Humphries*, 636 F.2d 1172, 1179 (9th Cir. 1980), *cert. denied*, 451 U.S. 988 (1981) (stressing that it "does not appear from the record that the driveway was enclosed by a fence, shrubbery or other barrier") ; *United States* v. *Magana, supra*, 512 F.2d at 1171 (stressing driveway's "degree of visibility from the street") ; *State* v. *Wilbourn*, 364 So. 2d 995, 997 (La. 1978), *cert. denied*, 444 U.S. 825 (1979) (proper for police to view evidence of hit-and-run accident on exterior of car parked in carport, where carport must be entered by anyone "knocking at the side-door to find out if someone was home or to deliver or sell something") ; and *State* v. *Corbett, supra* (officer proceeded 150–200 feet up long driveway through foliage; court stresses "the house number is marked at the entry and there is no gate").

██ In the instant case, there is no evidence that the driveway was enclosed by a fence or a gate. Therefore, we hold that the wardens were lawfully on the premises when they saw the deer carcass in plain view and seized it. As such, they were engaged in the lawful exercise of their duties at the time of the offense.

II.

██ The defendant next argues that the court erred by not instructing the jury that they had to determine whether the search was lawful under the Fourth Amendment. This argument is without merit. Whether a search violates the Fourth Amendment is a question of law, which the court must,

and in this case did at the status conference (V.R.Cr.P. 12(e)) and during the trial, decide. It is beyond dispute that the function of a jury is to be the finder of facts. A jury has no role in threshold determinations of legal issues.

### III.

The defendant's final argument is that the court should have granted a mistrial on the ground that the state's attorney inquired into a witness' knowledge of the pretrial ruling concerning the legality of the search. We disagree.

At the trial, the state's attorney asked one of the wardens the following question.

> Q. Were you present at a hearing at any time when the issue was raised with regard to whether you were required to have a warrant?
>
> A. Yes, sir.

Defense counsel objected and the court sustained the objection. After the issue was debated at a bench conference, the court had the answer stricken from the record and instructed the jury not to consider the answer that the warden had given.

The question asked and the answer given were harmless in nature. The answer merely indicated that the warden was present at a pretrial court hearing and did not indicate what the ruling was in that hearing. In any event, the court's curative steps ameliorated any prejudice which might have occurred.

For all the foregoing reasons we affirm.

*Affirmed.*