# State of Vermont v. Gary B. Byrne

[542 A.2d 276]

No. 86-220

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed January 15, 1988

*Joel Page*, Lamoille County State's Attorney, Hyde Park, for Plaintiff-Appellee.

*Dennis L. Provoncha*, Morrisville, for Defendant-Appellant.

**Mahady, J.** Following a jury trial, defendant was convicted for possessing a wild deer taken in closed season in violation of 10 V.S.A. § 4781 regulating the possession of big game. His appeal presents three issues: (1) whether the prosecution of this offense was precluded by a plea agreement in a previous case; (2) whether a search and seizure on defendant's home premises violated the Fourth Amendment to the United States Constitution; and (3) whether the State's evidence was sufficient to support the conviction. We affirm.

I.

Defendant claims that the State was foreclosed from prosecuting him for this offense by the terms of an earlier plea agreement. The fish and game violation occurred on October 6, 1985. At that time, a prosecution for driving while under the influence was pending against defendant. On October 17, the state's attorney signed the information which alleged the fish and game violation and filed it with the district court either that day or on the morning of October 21.

Later on the morning of October 21, defendant appeared for a calendar call on the motor vehicle charge. At that time a plea agreement was reached, presented to the court and accepted. Defendant entered a plea to that charge, was adjudicated guilty and was sentenced in a manner consistent with the terms of the agreement.

The agreement was on a printed form. A box next to a provision which read "[t]he State agrees not to bring further charges known to the State at this time" was checked. Notably, the box next to a provision whereby the State would agree to dismiss pending charges was not checked.

That afternoon, defendant was arraigned on the fish and game information. He was represented by the same attorney who had negotiated the plea agreement on his behalf and who had represented him when he changed his plea to the motor vehicle charge in reliance upon the plea agreement. At the arraignment, neither defendant nor his counsel voiced any objection to the fact that the State was proceeding with the fish and game violation.

Several months later, defendant moved to dismiss the fish and game information on the ground that the prosecution had violated the terms and conditions of the plea agreement on the motor vehicle charge. The trial court took evidence on the issue, made findings of fact and denied the motion.

Prosecutors must be held strictly to the terms of plea agreements. A defendant surrenders significant rights upon entering a guilty plea and is entitled to place reliance on the terms of a plea agreement being carried out. See *State* v. *Day*, 147 Vt. 93, 95, 511 A.2d 995, 997 (1986); *State* v. *Earle*, 145 Vt. 650, 653, 497 A.2d 28, 29 (1985).

In this case, the terms of the agreement are in dispute. A plea agreement is "contractual in nature and subject to contract law

standards." *Earle*, 145 Vt. at 652, 497 A.2d at 29. Therefore, "[a]ny dispute over the terms of the agreement is to be resolved by objective standards. What the parties agreed to in the plea bargain agreement is a question of fact to be resolved by the district court." *United States* v. *Krasn*, 614 F.2d 1229, 1233 (9th Cir. 1980) (citations omitted).

The trial judge correctly applied these principles. Appropriately, he took evidence and made findings of fact. He found that the deer case was filed and brought against the defendant prior to his entering into a plea agreement on the motor vehicle charge. Therefore, he found that the charge of the fish and game violation was not a new charge within the meaning of the agreement. He further found that the fish and game case was not intended by the parties to the plea agreement to be within the contemplation of the disputed term as indicated by the fact that the defendant was arraigned on the fish and game charge and did not raise an objection that the charge was to have been disposed of as part of a previous plea agreement until months later in his motion to dismiss. The court's findings are supported by the evidence and therefore they must stand. *State* v. *Harvey*, 145 Vt. 654, 657, 497 A.2d 356, 357 (1985). The denial of defendant's motion to dismiss was not error.

## II.

Prior to trial, defendant moved to suppress certain evidence obtained by fish and game wardens who were on his home premises without a warrant. The trial court granted the motion in part, suppressing evidence found within a garage.

Defendant claims that other evidence which was introduced at trial should also have been suppressed. This evidence consisted of hair and blood discovered by the wardens on and near a set of steps leading to a door of defendant's residence. The door was on the side of the house facing the street. A walk led from the street, across a lawn, to the steps and the door.

Our interpretation of the Fourth Amendment to the United States Constitution must be

> consistent with the understanding of the right to privacy expressed in . . . Fourth Amendment jurisprudence. Since *Katz* v. *United States*, 389 U. S. 347 (1967), the touchstone of Amendment analysis has been the question whether a

person has a "constitutionally protected reasonable expectation of privacy." *Id.*, at 360 (Harlan, J., concurring). The Amendment does not protect the merely subjective expectation of privacy, but only those "expectation[s] that society is prepared to recognize as 'reasonable.'" *Id.*, at 361.

*Oliver* v. *United States*, 466 U.S. 170, 177 (1984). Under this test, "an individual may not legitimately demand privacy for activities conducted out of doors . . . , except in the area immediately surrounding the home." *Id.* at 178.

The Fourth Amendment, therefore, particularly protects the home itself and the "curtilage," which is the land immediately surrounding the home and associated with it. "[T]he curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,' *Boyd* v. *United States*, 116 U. S. 616, 630 (1886), and therefore has been considered part of the home itself for Fourth Amendment purposes." *Id.* at 180.

In *Oliver*, Justice Powell noted that it was not necessary in that case "to consider the scope of the curtilage exception to the open fields doctrine or the degree of Fourth Amendment protection afforded the curtilage, as opposed to the home itself." *Id.* at 180 n.11. In this case, we must do so.

It is clear that protection of the curtilage under the Fourth Amendment is not absolute. See, e.g., *State* v. *Pike*, 143 Vt. 283, 465 A.2d 1348 (1983). In a recent case, the United States Supreme Court was required to examine the scope of the curtilage exception to the open fields doctrine. The Court held

> that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*United States* v. *Dunn*, 480 U.S. 294, 301, 107 S. Ct. 1134, 1139 (1987). Justice White, writing for the Court, was careful to point out that the holding was not to be considered "a finely tuned formula that, when mechanically applied, yields a 'correct' answer . . . ." *Id.* The factors are "useful analytical tools only to the de-

gree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.*

Applying the relevant *Dunn* factors to this case, the steps and the walk were immediately proximate to the home. However, their use was to provide access to the home from the street. Similar to the driveway involved in *Pike*, the area comprising the walkway and steps "as that portion of the curtilage which is the normal route of access for anyone visiting the premises, [was] only a 'semiprivate area.' " *Pike*, 143 Vt. at 287, 465 A.2d at 1351 (quoting *United States* v. *Magana*, 512 F.2d 1169, 1171 (9th Cir. 1975)).

When we focus, as we must, upon the underlying consideration required by the Fourth Amendment, namely, a person's reasonable expectation of privacy, it is clear that "[p]eople commonly have different expectations, whether considered or not, for the access areas of their premises than they do for more secluded areas." *State* v. *Corbett*, 15 Or. App. 470, 475, 516 P.2d 487, 490 (1973).

■ Therefore, when state officials come onto private property to conduct an investigation, observations made from a vantage point on an access area which visitors could be expected to use are not protected by the Fourth Amendment. *Pike*, 143 Vt. at 288, 465 A.2d at 1351. That is what happened here. The challenged evidence was properly admitted at trial.

## III.

■ Finally, defendant argues that the State's evidence was insufficient to support the conviction and that the trial court erroneously denied his motions for a directed verdict and for judgment notwithstanding the verdict. In particular, he challenges the sufficiency of the evidence as it relates to the element of "possession."

The test for granting such motions is " 'whether, taking the evidence in the light most favorable to the state and excluding modifying evidence, the state has introduced evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt.' " *State* v. *Burnham*, 145 Vt. 161, 165, 484 A.2d 918, 921 (1984) (quoting Reporter's Notes, V.R.Cr.P. 29(a)). The evidence

here is circumstantial. "Direct evidence, however, is unnecessary. 'Circumstantial evidence will sustain a conviction if it is sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt.'" *State* v. *Norton*, 147 Vt. 223, 230, 514 A.2d 1053, 1058 (1986) (quoting *State* v. *Miller*, 146 Vt. 164, 169, 502 A.2d 832, 835 (1985) (citations omitted)).

The evidence so viewed indicated that a fish and game warden during closed season observed fresh vehicle tracks leading into a field. He followed the tracks and discovered blood and deer hair. The warden then followed a trail of blood in the tire tracks to a road which in turn led to a dead end road where defendant's residence is located. Subsequently, a pickup truck came from the direction of defendant's residence. After the vehicle stopped, the warden observed blood on the tailgate as well as extensive blood and hairs in the bed of the truck. Analysis showed these to be deer blood and deer hair. Defendant was a passenger in the vehicle; there were two other men as well as a loaded gun in the cab. The tire treads on the vehicle were similar to those the warden had observed in the field. At the defendant's residence, wardens observed fresh tire tracks consistent with those of the pickup truck. The wardens also discovered blood and hairs on the walkway and steps leading to a door of defendant's residence. These facts were sufficient to convince a reasonable trier of fact that defendant possessed a wild deer in closed season beyond a reasonable doubt. The trial court correctly denied the motions for a directed verdict and for judgment notwithstanding the verdict.

*Affirmed.*