**Daniel Ray FOSTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–88–00188–CR.**

Court of Appeals of Texas,
Dallas.

March 17, 1989.

Patrick K. Westerbeck, Rockwall, for appellant.

Galen Ray Sumrow, Rockwall, for appellee.

Before STEWART, ROWE and BURNETT, JJ.

ROWE, Justice.

After a jury trial, Daniel Ray Foster was convicted of unlawful possession of a controlled substance. The jury sentenced Foster to fifty years' confinement and assessed him a $10,000.00 fine. In three points of error, Foster complains that the trial court erred: (1) in overruling his motion to suppress evidence seized during a warrantless search of a trailer home; (2) in denying his requested charge regarding probable cause to enter the property; and (3) in denying his requested charge concerning the existence of exigent circum-

stances. For the reasons discussed below, we overrule all three points of error and affirm the judgment of the trial court.

### Background

On March 26, 1987, officers Hampton Hall and Clyde Elrod were on routine patrol in a rural area of Rockwall County. As a part of their usual patrolling procedure, the officers steered their patrol car off Holly Dawn Road into a private driveway. They passed a trailer home situated roughly 150 feet from the road and headed toward a barn approximately 150 feet farther into the property. As they approached the barn, Elrod saw a person, later identified as "Gilbreath," peeking around the trailer at the officers.

When the officers turned around to investigate Gilbreath's presence, Gilbreath appeared to be hiding behind a broken-down car. The officers questioned Gilbreath and, although skeptical of Gilbreath's explanation of his presence, released him. The officers then drove to the front of the trailer and noticed that the door to the trailer home was slightly ajar. The officers got out of their car and went up to the porch to investigate. When they were within a couple of feet from the door, both officers smelled smoke.

The officers entered the mobile home and split up. Hall passed by the kitchen and noticed certain bottles and powder, leading him to believe that the mobile home was being used as a drug lab. Hall rounded a corner into a hallway and saw Foster crouched down at the other end of the hallway near a doorway. Foster appeared to be intoxicated. Hall called for Elrod, and the officers arrested Foster. After Foster's arrest, the officers entered the back room through the doorway near where they discovered Foster. In an open closet in that room, the officers found and seized various laboratory equipment and chemicals, including more than 1500 grams of amphetamine.

### Motion to Suppress

Prior to trial, Foster filed a motion to suppress all evidence resulting from his search and arrest. During the suppression hearing, Elrod and Hall testified that several windows in the mobile home were broken, and some were boarded up. The electric meter was removed so that the mobile home had no electricity. Trash and debris littered the yard, and tall weeds covered the yard. The mobile home contained no beds or other furniture, and the refrigerator had no food. There was no running water. Both officers testified that the property appeared abandoned.

Foster testified that he leased the mobile home on March 18, 1987, under an assumed name. On cross-examination, Foster admitted that he wasn't living in the mobile home at the time of his arrest, but claimed that he was going to clean it up and live there. Foster agreed that he didn't have any privacy expectations at all in the mobile home. Later, Foster changed his testimony and claimed that he had stayed in the mobile home overnight since he leased it and that he did have privacy expectations.

■■■■ When a defendant challenges the legality of a warrantless search by filing a motion to suppress, the State carries the burden of proving by clear and convincing evidence the legality of the search. *See Lalande v. State*, 676 S.W.2d 115, 117–18 (Tex.Crim.App.1984); *Matienza v. State*, 699 S.W.2d 626, 627 (Tex.App.—Dallas 1985, pet. ref'd). Texas's standards governing the legality of a warrantless search are coextensive with the standard contained in the Fourth Amendment of the United States Constitution. *See Kann v. State*, 694 S.W.2d 156, 159 (Tex.App.—Dallas 1985, pet. ref'd). To determine whether a search complies with this standard, we must determine: (1) whether the defendant by his conduct exhibits an actual, subjective expectation of privacy; and (2) whether society is prepared to recognize that expectation of privacy as reasonable. *Bower v. State*, Nos. 69,333–69,336, 769 S.W.2d 887, 896 (Tex.Crim.App. 1989); *Kann*, 694 S.W.2d at 159. Since the trial judge acts as the trier of fact in a suppression hearing, the trial judge must weigh the credibility of the witnesses and may choose to believe or disbelieve all or any part of any witness's

testimony. *Luckett v. State*, 586 S.W.2d 524, 527 (Tex.Crim.App. [Panel Op.] 1979); *Matienza*, 699 S.W.2d at 627.

■ In this case, the evidence introduced during the suppression hearing sufficiently established that Foster had no subjective expectation of privacy in the trailer home and its curtilage at the time of his arrest. The evidence showed that Foster had leased the trailer home only eight days earlier. Foster himself testified that he was not living in the trailer home and had no expectation of privacy at all. The officers' testimony concerning the condition of the trailer home and surrounding property on the date of the arrest buttress Foster's original admission concerning his lack of any privacy expectations. Although Foster subsequently changed his testimony, the record does not suggest that Foster originally misunderstood the question, nor does it explain Foster's reasons for changing. Since the other evidence overwhelmingly supported Foster's original response, the trial judge could properly have chosen to believe the original response and to disregard the subsequent change. We hold that the trial court did not err in overruling Foster's motion to suppress. We overrule his first point of error.

*Charge on Probable Cause*

In his second point of error, Foster challenges the trial court's denial of his requested charge on probable cause. Foster contends that the evidence introduced at trial raised an issue as to whether officers Hall and Elrod had probable cause to initially enter the private driveway from Holly Dawn Road. The State concedes that the officers did not have probable cause but argues instead that because the officers were on routine patrol, they had a right to enter the property regardless of whether they had probable cause.

■ When the evidence presented to the jury raises a fact issue regarding the legality of obtaining evidence, the trial court must instruct the jury that if it believes or has a reasonable doubt that the evidence was illegally obtained, it must disregard the evidence. *See Thomas v. State*, 723 S.W.2d 696, 707 (Tex.Crim.App.1986); *Jackson v. State*, 726 S.W.2d 217, 223 (Tex. App.—Dallas 1987, pet. ref'd); TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1988). The defendant need only put the trial court on notice as to what specific evidence raises such a fact issue and need not submit a model requested charge. *See Stone v. State*, 703 S.W.2d 652, 655 (Tex. Crim.App.1986). The trial court is required to submit an instruction only if there is a factual dispute as to how the evidence was obtained. *Thomas*, 723 S.W.2d at 707; *Murphy v. State*, 640 S.W.2d 297, 299 (Tex. Crim.App.1982).

■ In this case, the undisputed evidence establishes that the officers drove onto the property through an open gate to a private driveway. The evidence showed that this entryway afforded the normal means of access to the property. The State acknowledges that the officers, when doing so, lacked probable cause as that term is used in its conventional sense. Thus, there is no dispute as to the facts surrounding this entry. As to lawfulness of the entry, police may come on to private property if they utilize the normal means of access and if they do so for some legitimate purpose. 1 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 2.3(c) at 393–94 & § 2.3(f) at 412–13 (2d ed. 1987); *accord Lorenzana v. Superior Court*, 9 Cal.3d 626, 511 P.2d 33, 42, 108 Cal.Rptr. 585, 594 (1973); *People v. Shorty*, 731 P.2d 679, 682 (Colo.1987); *State v. Cloutier*, 544 A.2d 1277, 1280 (Me. 1988); *Gonzalez v. State*, 588 S.W.2d 355, 359 (Tex.Crim.App. [Panel Op.] 1979); *State v. Byrne*, 149 Vt. 224, 542 A.2d 276, 278–79 (1988). One recognized police activity is the conduct of preventive patrols to reduce opportunities for commission of certain crimes. ABA Standards for Criminal Justice § 1–2.2 (2d ed. 1980). Because the undisputed evidence establishes that officers Hall and Elrod not only utilized the normal means of access to the property but also entered for the legitimate purpose of conducting a routine preventive patrol, the lack of probable cause for the entry was not a controlling issue which required the

trial court to submit a special charge. Accordingly, we overrule Foster's second point of error.

### Charge on Exigent Circumstances

In his third point of error, Foster urges that the trial court improperly denied his requested charge on exigent circumstances. Foster maintains that the evidence introduced at trial raised an issue as to whether exigent circumstances existed to justify the officers' entry and exploration of the trailer home. The State asserts that the evidence clearly established that the officers entered the trailer home because they believed that the trailer home was on fire. The State contends, therefore, that because the officers reasonably believed that an emergency existed, the officers justifiably entered the premises without a warrant.

Both officers testified that when they approached the door of the trailer home after noticing that it was slightly ajar, they smelled smoke coming from inside the trailer. The officers agreed that the nearest fire department was several miles away and that the trailer would probably have been substantially damaged by the time fire officials arrived. The officers also agreed that they did not return to their patrol car to get a fire extinguisher. Although they believed the trailer was unoccupied, they testified that they were not really sure whether anyone was inside. The officers testified that they entered the trailer to protect the property from destruction and to check for occupants in need of assistance. The officers entered the trailer with their weapons holstered, announced "Sheriff's Department", and then split up to check for occupants. Officer Hall admitted that upon entering the trailer, he saw no smoke or fire,[1] but he continued to search anyway. During the exploration of the trailer, the officers discovered an old, partially burned floor covering, some milk cans containing burned charcoal, and a container filled with a substance undergoing a chemical reaction; however, the officers found no actual fire.

Although police normally need a warrant to enter a dwelling, sometimes the practical need for immediate action outweighs the citizens' right to protection from warrantless intrusions. *Corbett v. State*, 493 S.W.2d 940, 945 (Tex.Crim.App. 1973). Police may enter a dwelling without a warrant in an emergency situation to prevent serious bodily injury or the destruction of property. *See Janicek v. State*, 634 S.W.2d 687, 691 (Tex.Crim.App. [Panel Op.] 1982); *Bray v. State*, 597 S.W. 2d 763, 764 (Tex.Crim.App. [Panel Op.] 1980); 2 LaFAVE, *supra*, § 6.6(a) at 697 & § 6.6(b) at 706. The State has the burden of proving that the exigencies of the situation justified the warrantless entry. *Janicek*, 634 S.W.2d at 691; *Bray*, 597 S.W.2d at 765. The police may seize any evidence in plain view that comes to their attention during the course of their emergency activities. *Bolden v. State*, 634 S.W.2d 710, 713 (Tex.Crim.App. [Panel Op.] 1982). Any search for such evidence, however, must be strictly circumscribed by the exigencies which justify its initiation. *Bolden*, 634 S.W.2d at 713.

In order to prove that an emergency existed justifying a warrantless entry, the State must prove three basic elements. First, the police must have objectively reasonable grounds to believe that there is an immediate need for the police to act in order to protect life or property. *Janicek*, 634 S.W.2d at 691; *Bray*, 597 S.W.2d at 765; 2 LaFAVE, *supra*, 6.6(a) at 699. Second, the police must not be primarily motivated by a desire to arrest a person or seize evidence. 2 LaFAVE, *supra*, § 6.6(a) at 700; *see Janicek*, 634 S.W.2d at 690. Third, there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place entered. 2 LaFAVE, *supra*, 6.6(a) at 700; *see Janicek*, 634 S.W.2d at 690. The primary criterion is the objective reasonableness of the officers' belief as to the existence of an emergency, not the existence of

---

**1.** At the suppression hearing, Elrod had testified that the trailer was full of smoke. At the trial, however, he was not asked whether he saw smoke after entering the trailer.

the emergency in fact. *Corbett*, 493 S.W. 2d at 946. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process. *Corbett*, 493 S.W.2d at 945, citing *Wayne v. United States*, 318 F.2d 205, 212 (D.C.Cir.1963) (opinion by J. Burger).

Turning to the particular facts of this case, we find no factual dispute as to the officers' entry and exploration of the trailer home. The officers had just seen a suspicious person on apparently abandoned property and discovered that the door of the trailer home was slightly open. While investigating the open door, both officers testified that they smelled smoke. The evidence showed that if the trailer was on fire, it would have been substantially destroyed before fire officials arrived at the scene. The officers entered the trailer with their guns holstered, shouted "Sheriff's Department," then split up to search for occupants. Although the officers did not observe an actual fire upon entering the premises, we do not think that the officers acted improperly in checking the remainder of the trailer home. *Cf. Corbett*, 493 S.W.2d at 947; *Brown v. State*, 475 S.W.2d 938, 949–50 (Tex.Crim.App. 1971). Accordingly, we overrule Foster's third point of error.

We affirm the judgment of the trial court.