# State of Vermont v. Michael J. Elkins

[580 A.2d 1200]

No. 88-509

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed August 3, 1990

*James A. Hughes,* Franklin County Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

*Kurt M. Hughes* of *Wool & Murdoch,* Burlington, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from a jury verdict finding him guilty of simple assault on a police officer in violation of 13 V.S.A. §§ 1023(a)(1) and 1028. We affirm.

The parties do not dispute the events preceding the arrival of a Franklin County deputy sheriff at defendant's home. At approximately 10:30 p.m. on a November, 1987 evening, the deputy parked near an intersection and sat in his cruiser running radar and completing paperwork. The radar gun indicated that a vehicle approaching the intersection was speeding. The vehicle turned onto the road where the cruiser sat and in so doing crossed the center line of the road. The deputy activated the cruiser's blue lights and pursued the vehicle. After a short distance, the vehicle turned into the driveway of a residence. As the deputy approached the residence, he obtained a general description of defendant whom he observed getting out of the vehicle. Defendant walked toward the screened-in portion of the residence. The deputy pulled the cruiser with blue lights flashing in front of the house, got out, and yelled for defendant to stop. Defendant hesitated for a moment, and then proceeded into the house. The deputy radioed the state police barracks for a license and registration check on the vehicle, but did not wait for the response.

The deputy entered the porch through the screen door and knocked on the interior door of the house. Defendant came to the door, and when the deputy stated that he wished to speak to defendant about his operation of the vehicle, defendant asked if the deputy had a warrant. The deputy informed defendant that he had witnessed the violation of two motor vehicle laws and need not obtain a warrant before questioning him. Defendant became increasingly irritated with the deputy's polite but persistent questioning and the continued flashing of the cruiser lights in front of the house. Defendant's wife approached and said that she was the vehicle's driver. The deputy, however, re-

mained unconvinced. After putting on his shoes, defendant followed the deputy out onto the front lawn to continue the discussion.

Once outside, the confrontation escalated. Defendant demanded that the deputy turn off the blue lights "or else he would blow them off." In an effort to calm defendant, the deputy turned to extinguish the cruiser lights. The deputy testified that he then saw defendant reach behind his back. The deputy turned back toward defendant and began to ask him to keep his hands in plain view. Before the deputy could get the full words out, defendant swung his arm around and struck the deputy's left eye causing pain. The deputy then grabbed defendant. The two fell against the house and then to the ground as they grappled. Defendant sustained a broken leg in the fall.

Defendant's evidence painted a different picture of the events that transpired upon the deputy's arrival at the residence. Defendant, his wife, and his son testified that defendant closed the door on the deputy after the deputy refused to explain what he wanted to discuss with the driver of the vehicle. The deputy, however, continued to bang on the door and again asked to speak with the driver of the vehicle. Again, defendant demanded to know the reason for the inquiry. This time the deputy explained that he had witnessed the vehicle swing wide on the turn coming into town. Defendant then donned his shoes and accompanied the deputy to the front lawn. The impasse, however, continued, and defendant never admitted that he was the vehicle's driver. Defendant denied swinging at the deputy or hitting him in any way, but told the deputy he would not answer any more questions and was going to bed. As defendant began to turn to go back into the house, the deputy tackled defendant and the two fell to the ground in front of the porch.

The court denied defendant's motion for judgment of acquittal. The jury found defendant guilty of simple assault on a police officer.

Defendant raises the following arguments on appeal: (1) the deputy was not performing a lawful duty within the meaning of 13 V.S.A. § 1028; (2) the trial court erred in its instructions regarding defendant's right not to answer questions posed to

him by the deputy; (3) the court committed plain error in its instructions on reasonable doubt; (4) the court erred in failing to grant defendant's motion for acquittal because there was insufficient evidence that defendant purposefully assaulted the deputy; (5) the court erred in failing to order a new trial; (6) the misconduct committed by a prosecution witness constituted prejudice that required the court to grant a mistrial. We reject each of these arguments and affirm.

I.

Defendant contends that his entry into his residence ended the deputy's lawful duty and left the deputy without authority to proceed onto defendant's property. Therefore, defendant argues that the State could not prove that the deputy was assaulted while performing a lawful duty, an essential element of the charge.[1]

"13 V.S.A. § 1028 makes the offense of simple assault, 13 V.S.A. § 1023, a different and more serious crime when inflicted upon a police officer performing a lawful duty." *State v. Fuller,* 146 Vt. 364, 365, 503 A.2d 550, 551 (1985); see also *State v. Peters,* 141 Vt. 341, 347, 450 A.2d 332, 335 (1982) (essential element of the offense that the assault occur while the officer is performing a lawful duty).

The deputy's observations of defendant's driving provided him with a reasonable suspicion that defendant had committed two motor vehicle violations. Therefore, the deputy had the authority to make an investigative stop. *State v. Paquette,* 151 Vt. 631, 634, 563 A.2d 632, 635 (1989). A police officer may conduct an otherwise valid investigative stop in the semiprivate areas within the curtilage that comprise the normal access route for anyone visiting the premises. See *State v. Ryea,* 153 Vt. 451, 453–54, 571 A.2d 674, 675 (1990) (Fourth Amendment does not absolutely protect the curtilage; therefore police offi-

---

[1] In a related argument, defendant asserts that the deputy's entry onto the property constituted an illegal search which tainted, and thereby compels the exclusion of, all the evidence of the events subsequent to the entry. Defendant did not raise this argument before the trial court, and we decline to consider it on appeal. See *State v. Gleason,* 154 Vt. 205, 215, 576 A.2d 1246, 1252 (1990).

cer could conduct an investigative stop in the residential driveway of a person suspected of driving with a suspended license); *State v. Byrne*, 149 Vt. 224, 228, 542 A.2d 276, 278–79 (1988) (state officials could investigate game violation from the steps and walkway of a home). In *People v. Kozlowski*, 69 N.Y.2d 761, 505 N.E.2d 611, 513 N.Y.S.2d 101 (1987), a police officer investigating a reported traffic incident made a warrantless entry onto the defendant's property. The officer walked onto the porch, opened the screen door to knock on the front door, and then banged loudly to summon the defendant/driver. The officer readily observed the symptoms of intoxication and placed the defendant under arrest after he admitted he had been drinking and had been involved in the reported accident. The New York Court of Appeals explained that the officer reached the "defendant's front door by the means defendant had made available for public access to his house, and did not intrude into any area in which defendant had a legitimate expectation of privacy." *Id.* at 763, 505 N.E.2d at 612, 513 N.Y.S.2d at 102. The Court of Appeals held that "[a]bsent evidence of intent to exclude the public, the entryway to a person's house offers implied permission to approach and knock on the front door," and therefore the police could utilize that access for the purpose of making inquiry. *Id.* at 763, 505 N.E.2d at 612–13, 513 N.Y.S.2d at 102–03.

We agree with the reasoning of *Kozlowski* regarding the propriety of the deputy's actions in the instant case. The deputy saw the vehicle's driver enter a residence. The deputy acted within his authority to conduct an investigation by approaching the house, knocking on the door, and asking to speak to the driver of the vehicle. See *State v. Pike*, 143 Vt. 283, 287–88, 465 A.2d 1348, 1351 (1983) (front porch is part of the normal route of access for anyone visiting the premises); *State v. Sanders*, 374 So. 2d 1186, 1189 (La. 1979) ("It is an almost implicit understanding and custom in this country that, in the absence of signs or warning, a residence may be approached and

the occupants summoned to the door by knocking.").[2] Therefore, it was possible for the State to prove that the deputy was performing a lawful duty when he was assaulted.

■ The result would not change even if the deputy's actions contravened the Fourth Amendment's prohibition against unreasonable search and seizure.[3] In a 13 V.S.A. § 1028 prosecution, the "lawfulness of the officer's duty is to be measured against the scope of his employment and not against the ultimate decision regarding the technical legality of the activities in question." *State v. Desjardins*, 142 Vt. 255, 258, 454 A.2d 1230, 1231 (1982); see also *State v. Fuller*, 146 Vt. at 366, 503 A.2d at 551 (even if officer illegally recorded the defendant's telephone conversation, the officer was not taping at the critical time—when the assault took place). The lesser included offense, 13 V.S.A. § 1023, requires only that an unjustified assault occurred and § 1028 enhances the penalty if the defendant assaults a police officer in the performance of a lawful duty. Therefore, the lawfulness of the deputy's conduct has relevance only to the defense issues of provocation and self-defense. *Desjardins*, 142 Vt. at 259, 454 A.2d at 1231.

## II.

Defendant contends that the court erred by failing to instruct the jury that they were to "draw no conclusions adverse to the defendant based on his refusal to answer questions." The court, over the timely objection of defendant, charged:

---

[2] The record does not indicate that the porch area was "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *State v. Byrne*, 149 Vt. 224, 228, 542 A.2d 276, 278 (1988) (citations omitted); see also *State v. Zaccaro*, 154 Vt. 83, 87 n.1, 574 A.2d 1256, 1259 n.1 (1990) (evidence sufficient to establish that porch was accessible to any member of the public wishing to contact the residents of the house). We leave open the question of whether, on a different set of facts, the police must stop at the porch door when conducting an investigation.

[3] Defendant also argues Chapter I, Article 11 of the Vermont Constitution prohibited the deputy's entry onto the residential premises. We note that defendant does not explain why or how Article 11 affords greater protections from searches and seizures in semiprivate areas than the Fourth Amendment. Therefore, we decline to consider this argument on appeal. See *State v. Muir*, 150 Vt. 549, 550–51, 554 A.2d 671, 672 (1988).

> Now there has been testimony that the defendant did not want to answer the questions of [the deputy]. That was his right under the United States and Vermont Constitutions. You are to draw no conclusions adverse to defendant based solely on the fact that he refused to answer the questions of [the deputy].

Defendant argues that this instruction violated his rights against self-incrimination under the Fifth and Fourteenth Amendments of the United States Constitution and Chapter I, Article 10 of the Vermont Constitution.[4] We disagree.

The deputy and defendant offered different recollections of the events leading up to the assault. Defendant sought to establish that the deputy had transgressed the bounds of his lawful duty as evidenced by his repeated requests to speak to the driver of the vehicle. Thus, it was defendant's own testimony that emphasized his evasive answers to the deputy's persistent inquiries. The State cross-examined defendant on his repeated failure to identify himself as the vehicle's driver in response to the deputy's inquiries and recounted defendant's version of the events in closing.

■ ■ The instruction given cautioned the jury against drawing the unlikely but nonetheless impermissible inference that defendant was guilty of assault because he failed to admit that he drove the vehicle observed by the deputy. While it is the better practice to avoid the word "solely" because it adds nothing to the charge, we think defendant has undertaken a too technical reading of the instruction. "As long as the court fulfills its duty to define the essential issues of fact and instruct on the applicable law, it is free to choose its own language." *State v. Messier*, 146 Vt. 145, 149, 499 A.2d 32, 36 (1985). We conclude that the reasonable juror hearing this instruction within the context of the entire charge would not be misled and would understand it to mean that defendant's silence formed no part of the case. See *State v. Boulware*, 183 Conn. 444, 445, 441 A.2d 1, 2 (1981) (court did not err by instructing jury that "you may not

---

[4] For the reasons expressed in the preceding section we do not reach defendant's argument under the Vermont Constitution.

draw any unfavorable inference as to [the defendant's] guilt merely because of his failure or refusal to testify"); *State v. Tropiano*, 158 Conn. 412, 432–33, 262 A.2d 147, 156 (1969) (jury received adequate guidance from instruction that no inference of guilt should be drawn against the defendant "for the reason alone" that he did not testify or produce witnesses on his own behalf), *cert. denied*, 398 U.S. 949 (1970).

## III.

■ Defendant asserts that the trial court erred in charging the jury that reasonable doubt was "a real doubt based upon reason" and that it was proof "so convincing that persons would not hesitate to act on it in matters of great personal importance." Defendant raised no objection to this aspect of the jury charge. Therefore, we will reverse only upon a showing of plain error. *State v. Doucette*, 143 Vt. 573, 589, 470 A.2d 676, 686 (1983).

This Court recently considered both of these efforts to explain reasonable doubt in *State v. Francis*, 151 Vt. 296, 301–04, 561 A.2d 392, 395–97 (1989). While we expressed disapproval with language of this type, we did not reverse the conviction because of it.

## IV.

Defendant contends that the State failed to introduce evidence that fairly and reasonably tended to show that he purposefully assaulted the deputy in the performance of a lawful duty.[5] Therefore, defendant argues that the trial court erroneously denied defendant's motion for acquittal.

■ In a review of a denial of a V.R.Cr.P. 29 motion for judgment of acquittal, "we look to see if the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant[ ] [is] guilty beyond a

---

[5] Section I of this opinion disposes of defendant's claim with respect to the deputy's performance of a lawful duty.

reasonable doubt." *State v. McBurney*, 145 Vt. 201, 204, 484 A.2d 926, 928 (1984).

██  Here, the State and the defense both introduced evidence that showed that the deputy's presence at the house, his determined questioning, and the flashing of the cruiser lights combined to aggravate defendant. The evidence conflicted regarding how the deputy sustained an injury to his eye. The deputy testified that, as he turned toward the cruiser, the irate defendant struck him in the eye with an open hand and that the blow hurt. When viewed in the light most favorable to the State, this evidence fairly and reasonably tended to show the purposefulness of defendant's conduct. Therefore, the issue was appropriately committed to the province of the jury.

## V.

The trial court also denied defendant's motion for a new trial. Defendant claims that the court erred because the conviction was based solely upon the deputy's uncorroborated and conflicting statements and therefore the evidence preponderated heavily against the jury's verdict.

██  "[A] new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *State v. Ladabouche*, 146 Vt. 279, 285, 502 A.2d 852, 856 (1985). In deciding a V.R.Cr.P. 33 motion, the trial court may weigh the evidence and consider the credibility of the witnesses. *Id.* at 285, 502 A.2d at 857. The court's decision on a new trial motion is a matter committed to the sole discretion of the court and will stand on appeal unless defendant can show that "the court's discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable." *State v. Jewell*, 150 Vt. 281, 284, 552 A.2d 790, 792 (1988) (citations omitted).

██  The court indicated that the "young and inexperienced" deputy "bungled" the inspection of the motor vehicle violations and that he exhibited a poor memory for "nonessential details." However, the court found that the dep-

uty "relate[d] a clear statement of the essential event that was sufficiently credible and coherent for the jury to accept" over the conflicting evidence offered by defendant. We conclude upon review of the record that the evidence does not preponderate heavily against the verdict. Therefore, the court did not commit an abuse of discretion in denying defendant's motion for a new trial.

## VI.

Lastly, defendant claims that the trial court erred by refusing to declare a mistrial due to a witness's misconduct while testifying. We disagree.

The prosecution called the Franklin County Sheriff to the stand to testify on the issue of whether the deputy was a certified law enforcement officer. The sheriff appeared in civilian clothing. His testimony consisted of a short direct and cross-examination and the introduction of copies of the deputy's certification letter. Defense counsel made a number of objections to the testimony. The day after the sheriff's testimony and after the jury began deliberations, defense counsel informed the court that defendant had indicated to him that during cross-examination the sheriff looked toward the jury and rolled his eyes toward the ceiling. Defendant also alleged that a juror responded in a similar fashion.

The court questioned the juror in chambers and in the presence of counsel. The juror stated that she believed that the sheriff responded by rolling his eyes at every question asked and could not recall whether she ever responded in kind. The trial court later denied defendant's motion for a mistrial.

"Motions for mistrial are committed to the trial court's sound discretion and should not be granted absent a showing of prejudice." *State v. White*, 150 Vt. 255, 257, 551 A.2d 1204, 1205 (1988) (citations omitted). "There is no abuse of discretion unless the party claiming it establishes a total failure to exercise discretion, or its exercise upon grounds that are clearly untenable or unreasonable." *State v. Covell*, 142 Vt. 197, 199, 453 A.2d 1118, 1119 (1982).

The court, which observed the entire trial, expressed its belief that the sheriff's "juvenile" behavior actually detracted from the State's case and found that the juror was unimpressed by this conduct. Further, defendant failed to raise an objection to the sheriff's actions when a curative instruction would have corrected any error. See *State v. Bartlett*, 137 Vt. 400, 405, 407 A.2d 163, 166 (1979) (failure to move for mistrial when facts about misconduct of a juror became known may result in waiver). Upon review of the record we agree with the trial court that no prejudice has been shown. The trial court did not abuse its discretion by denying defendant's mistrial motion.

*Affirmed.*