## In re Bruce Cohen

[640 A.2d 34]

No. 92-268

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 21, 1994

Motion for Reargument Denied March 8, 1994

*Robert Appel,* Defender General, and *Anna Saxman,* Appellate Attorney, Montpelier, for Petitioner-Appellant.

*Thomas M. Kelley,* Drug Prosecutor, Montpelier, for Respondent-Appellee.

**Gibson, J.** Petitioner appeals the denial of his petition for post-conviction relief alleging ineffective assistance of counsel. We affirm.

Petitioner pled guilty to possession of marijuana, and subsequently was convicted of cultivation of marijuana following a ten-day jury trial. This Court affirmed the conviction. See *State v. Cohen,* 157 Vt. 654, 599 A.2d 330 (1991) (mem.). Petitioner then sought post-conviction relief, pursuant to 13 V.S.A. § 7131, alleging ineffective assistance of counsel. The trial court denied the petition, and petitioner appeals, claiming the court erred by concluding that counsel's representation was not ineffective regarding (1) his failure to challenge a warrantless air search, (2) his failure to object to the prosecutor's closing remarks, and (3) his investigation of the facts. Petitioner also claims the court misinterpreted our holding in *State v. Dupaw,* 134 Vt. 451, 365 A.2d 967 (1976), when it ruled on what must be shown in order to challenge a search warrant affidavit.

In a post-conviction relief hearing, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding." *Strickland v. Washington,* 466 U.S. 668, 696 (1984); *In re Bentley,* 144 Vt. 404, 409, 477 A.2d 980, 983 (1984) ("[P]ost-conviction relief proceedings do not address the guilt or innocence of the defendant, but the fairness of the proceedings leading to conviction and incarceration."). To obtain post-conviction relief based on a claim of ineffective assistance of counsel, a petitioner must make two showings: (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that the deficiencies in counsel's representation were prejudicial. *Strickland,* 466 U.S. at 687–88; *In re Ringler,* 158 Vt. 118, 121, 605 A.2d 522, 523 (1992). "Judicial scrutiny of counsel's performance must be highly deferential" to the judgment of coun-

sel in light of the circumstances existing at the time. *Strickland*, 466 U.S. at 689; *In re Ross*, 158 Vt. 122, 126, 605 A.2d 524, 526 (1992). To demonstrate prejudice, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; accord *In re Ringler*, 158 Vt. at 121, 605 A.2d at 523 (applying the *Strickland* standard). If reasonableness has been demonstrated, the court need not determine whether defendant suffered prejudice. *Strickland*, 466 U.S. at 697. We will uphold the decision of the court unless there is clear error. *In re Hanson*, 160 Vt. 111, 115, 623 A.2d 466, 468 (1993).

## I.

Petitioner contends that the trial court erred in concluding that counsel's decision not to challenge the warrantless air search under the Vermont Constitution was reasonable and did not prejudice him. In August 1985, a state police officer conducted an aerial surveillance of petitioner's property. He observed a patch of suspected marijuana about 100 yards from petitioner's home and what appeared to be a path leading from the house to the patch. Based on this observation and two other supporting affidavits, a search warrant was issued for the house and property. Petitioner claims the aerial surveillance of his property violated Chapter I, Article 11 of the Vermont Constitution and that counsel's failure to challenge the search constituted ineffective assistance.

The information available to counsel was that the plane was about 700 to 900 feet above ground level during the aerial surveillance and that the patch of suspected marijuana was not within the curtilage of the home. See *Oliver v. United States*, 466 U.S. 170, 180 (1984) (curtilage is area immediately adjacent to home which individual reasonably expects will remain private). Counsel concluded that the aerial observation yielded no evidence that could be suppressed and that there was no evidence that the flight violated the airspace protected by the United States or Vermont constitutions.

The court found that, at the time of petitioner's trial in 1987, the law was clear that "open fields" were not protected by

the Fourth Amendment. See *id.* at 181 ("[A]n individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers."). It concluded there was no reason to believe the Vermont Supreme Court would have reached a contrary conclusion at that time. See *State v. Byrne*, 149 Vt. 224, 226–28, 542 A.2d 276, 278 (1988) (following *Oliver* in applying Fourth Amendment).* Further, the court found that petitioner had not shown that the airplane flew in airspace protected by either the Fourth Amendment or Chapter I, Article 11 of the Vermont Constitution. Indeed, a review of the record reveals no evidence that the airplane flew over petitioner's property at all or that it flew low enough to violate petitioner's reasonable expectation of privacy even if the flight had taken place directly over the property. Cf. *Florida v. Riley*, 488 U.S. 445, 451 (1989) (plurality) (no violation of Fourth Amendment where helicopter flew at altitude of 400 feet); *United States v. DeBacker*, 493 F. Supp. 1078, 1081 (W.D. Mich. 1980) (no violation of Fourth Amendment where airplane flew at altitudes of 200 feet and 50 feet). We find no error in the court's findings, or in its conclusion that counsel's failure to file a motion to suppress was not unreasonable.

## II.

Petitioner claims the trial court erroneously concluded that he was not prejudiced by counsel's failure to object to the closing remarks of the prosecutor. During petitioner's trial in 1987, the state's attorney referred to a defense witness as a liar, called petitioner a "flatlander," said the defense was trying to confuse the jury, and described marijuana cultivation and intimidation of the community as a "nightmare."

 The trial court found that petitioner's arguments had been considered and rejected in the hearing on his motion for a

---

* As recognized by the post-conviction relief court, this Court has departed from the federal "open fields" doctrine since petitioner's trial. See *State v. Kirchoff*, 156 Vt. 1, 10, 587 A.2d 988, 994 (1991). We do not, however, render any opinion today on whether counsel's strategy would necessarily have changed in the light of *Kirchoff*. For purposes of reviewing the court's holdings in this case, *Kirchoff* is irrelevant.

new trial, and that this Court had found no plain error on review. The trial court also found that counsel's decision not to object was a strategic decision based on a reasonable belief that repeated objections would negatively influence the jury. Although the court ruled that the state's attorney's appeal to the fears and emotions of the jury was improper, citing *State v. Trombly*, 148 Vt. 293, 301, 532 A.2d 963, 968 (1987), *cert. denied*, 486 U.S. 1029 (1988), the court found that the overwhelming evidence against petitioner did not present a close case for the jury, and therefore concluded that the failure of counsel to object did not prejudice petitioner. The evidence supports the court's findings, see *In re Fadden*, 148 Vt. 116, 119, 530 A.2d 560, 562 (1987) (findings in post-conviction relief proceeding "will stand if supported by any credible evidence"), and petitioner has failed to show a reasonable probability that objections to the remarks of the prosecutor would have changed the trial result.

## III.

Petitioner contends that the trial court erroneously concluded that counsel's investigation of the facts relating to his alibi defense and counsel's questioning of a defense witness were reasonable.

## A.

Petitioner claims that counsel failed to investigate his alibi and his finances adequately and that this failure amounted to ineffective assistance. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . . The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . [W]hat investigation decisions are reasonable depends critically on such information." *Strickland*, 466 U.S. at 691.

Petitioner told counsel that he could not have been responsible for the cultivation of the marijuana because he was in California until late May of 1985 and could not have planted or tended the marijuana. He expressed no uncertainty in recalling his whereabouts. During the trial, however, the prosecutor in-

troduced evidence that petitioner cashed a $6,000 check in Vermont on April 29, 1985.

■ Petitioner's adamant assertion to counsel that he was in California until late May was corroborated by his wife and a friend, Dr. Paul Seigel. Further, counsel spoke with other witnesses who confirmed that petitioner had not been seen in Vermont during the spring of 1985. Counsel also obtained records indicating that petitioner had undergone medical treatment in California on April 12, 1985. The court concluded that counsel's investigation did not fall below the level of a reasonably competent defense attorney. We agree that counsel's investigation was reasonable, especially where petitioner's own untruthfulness provided the State's opportunity for rebuttal.

■ Petitioner also claims that counsel failed to investigate his finances adequately because counsel failed to uncover the evidence of the $6,000 check that the State used to impeach petitioner's alibi. As part of his trial strategy, counsel needed to show that petitioner had income other than proceeds from the alleged sale of marijuana. Counsel's investigation produced unrebutted testimony and documentary evidence of the source of petitioner's legitimate income, which included a substantial stock transfer from petitioner's wealthy brother, lack of a home mortgage, and modest living expenses. The court concluded that the extent of counsel's investigation was reasonable in light of the defense strategy. This conclusion is supported by the findings, which are not clearly erroneous.

### B.

At trial, petitioner's counsel questioned Dr. Seigel, who had known petitioner for a long time, whether he considered petitioner to be a substance abuser. This question opened the door for the State to ask Dr. Seigel about petitioner's prior conviction for possession of marijuana in New York in 1973 or 1974. Petitioner claims that counsel's opening the door to impeachment by the prior conviction was ineffective assistance.

■ Counsel's strategy at trial was to show that, although petitioner may have used drugs recreationally, he was not a substance abuser. As part of this strategy, petitioner pled guilty

to the companion charge of possession. Counsel's decision for petitioner to plead guilty was based on the strong evidence obtained during the search of petitioner's house and the damage to petitioner's credibility in the eyes of the jury if he denied knowledge of the marijuana found in his house. Counsel also decided to elicit evidence from Dr. Seigel that he had known petitioner for twenty years and that the doctor had expertise in the area of substance abuse. Dr. Seigel testified that he had never witnessed any behavior of petitioner that was consistent with substance abuse. The court concluded that counsel's strategy was reasonable and, in light of this strategy, that counsel's questioning of Dr. Seigel was reasonable.

Even if counsel erred by opening the door to impeachment, however, the court concluded that petitioner failed to show prejudice, as required. See *In re Ringler*, 158 Vt. at 121, 605 A.2d at 523. The court found that Dr. Seigel's testimony was not completely rebutted by the State. After learning of the prior New York conviction, Dr. Seigel testified that his opinion about petitioner had not changed, and petitioner presented unrebutted testimony that he had received a certificate of relief, which he described as being in the nature of a pardon. Finally, petitioner pled guilty to possession of marijuana in 1985, so evidence of a prior conviction for possession added little to the State's proof of cultivation. We agree with the court's conclusion that counsel's questioning was reasonable, but even if it was not, any prejudice to petitioner was insufficient to undermine confidence in the outcome of the case.

## IV.

Petitioner also claims counsel was ineffective for failing to request a hearing, wherein it could have been shown that the affidavits underlying the search warrant contained "relevant misstatements," *State v. Dupaw*, 134 Vt. at 453, 365 A.2d at 968, thus rendering the warrant invalid. Petitioner argues that *Dupaw* established the right of defendants to challenge the veracity of warrant affidavits, and set forth "relevant misstatements" as the standard by which to address such challenges. Petitioner misreads *Dupaw*.

*Dupaw* involved an arrest warrant that was ruled invalid because it was "utterly devoid of factual support." *Id.* at 452, 365 A.2d at 968. This Court held that if physical evidence obtained during an arrest is suppressed because of an invalid arrest warrant, the police officers' testimony regarding their examination of that evidence must also be suppressed. *Id.* at 454, 365 A.2d at 969.

In this case, petitioner argues that the affidavits contained misstatements about the shape of petitioner's house and the existence of a path leading from the house to the marijuana patch. Further, petitioner claims one affidavit contained a material omission because it did not identify the source of its information. According to petitioner, because there are relevant misstatements in the affidavits, the remedy is to void the affidavits and exclude any evidence discovered in the search.

■ In *Dupaw*, because of the false affidavit, the invalidity of the arrest warrant was uncontested; the issue therein was whether the exclusionary rule should be extended to cover indirect as well as direct products of an unlawful arrest. Here, the court found that, although the house was not "round," or "circular-shaped," as described in the affidavits, but multi-sided, the balance of the description of the house and its location were accurate and that, even excluding the challenged statements, there was more than sufficient and accurate description of petitioner's residence to support a finding of probable cause. The path was described as an "apparent" path, and the court found there was no necessary inconsistency in the statements that required disclosure of the source of the information. Petitioner has failed to demonstrate that the affidavits contained material misstatements or that they were "utterly devoid of factual support." We find no error in the court's refusal to apply *Dupaw* as urged by petitioner.

*Affirmed.*