# State of Vermont v. Michael Blow

[602 A.2d 552]

No. 88-422

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed November 1, 1991

Motion for Reargument Denied December 5, 1991

514

*William Sorrell*, Chittenden County State's Attorney, Burlington, and *Thomas M. Kelly*, Drug Prosecutor, Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Paul D. Jarvis* of *Jarvis & Kaplan*, Burlington, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals his conviction of two counts of dispensing marijuana in violation of 18 V.S.A. § 4224(g) and one count of obstructing justice in violation of 13 V.S.A. § 3015. We reverse and remand on all counts.

On March 6, 1987, a police informant met with a Burlington detective and indicated that he could purchase drugs from de-

fendant. He was then equipped with an electronic audio transmitter and transported to defendant's residence, where he purchased marijuana. The detective monitored their conversation during the sale. The same procedure occurred five days later, with the same detective monitoring the conversations accompanying the sale. Defendant was later charged with two counts of dispensing marijuana to the informant. The obstruction of justice count was based on the informant's allegation that on November 27, 1987, defendant struck him for "ratting him out."

Defendant's pretrial motion to suppress the tape recordings of the transactions and the officer's testimony about them was granted. The trial judge, however, later ruled that the recordings and testimony could be used at trial, and the detective testified about the conversations between the informant and defendant at the time of the sale. The recordings themselves were not introduced. The jury convicted defendant, and this appeal followed.

## I.

We express, at the outset, our disapproval of the action of the trial judge in reversing the ruling of the motions judge. Although the error is not determinative of this appeal, we will explain the reasons for our disapproval because of the great importance of the issue and the need to clarify the relationship between pretrial and trial suppression motions.

Defendant moved to suppress evidence derived from the transmissions. The motions judge, after a hearing, prepared a well-considered opinion and order granting the motion. On the first day of trial in April of 1988, the State orally requested that the trial judge review the suppression decision "to determine whether or not the court would rule differently." The trial judge decided that the pretrial ruling was wrong and reversed it, stating that "the trial judge is not bound by the decision of the pretrial judge." No evidence was offered at the time of the later ruling. The evidence from the transmissions was then admitted at trial.

Motions to suppress are required to be filed pretrial "'to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt.'" *State v. Clark*,

152 Vt. 304, 307, 565 A.2d 1332, 1334 (1989) (quoting *Jones v. United States*, 362 U.S. 257, 264 (1960)). Granting the motion to suppress makes the evidence inadmissible "at the trial or at any future hearing or trial." V.R.Cr.P. 41(f). We have held that pretrial rulings are tentative and subject to revision at trial. *State v. Baldwin*, 140 Vt. 501, 514, 438 A.2d 1135, 1142 (1981); see also *State v. Senecal*, 145 Vt. 554, 558, 497 A.2d 349, 351 (1985) (failure to object to admission of evidence at trial which defendant had sought to suppress in pretrial motion before another judge was waiver of objection).

■ Reconsideration by the trial judge, however, is appropriate only "in the face of additional evidence or other considerations developing during trial of the case which might otherwise dictate a modification or a reversal of the preliminary rulings." *Baldwin*, 140 Vt. at 514, 438 A.2d at 1142. Our policy of requiring additional evidence or other objective considerations as a predicate to reconsidering a pretrial suppression ruling is even stronger where the pretrial suppression motion is granted. As the court stated in *McRae v. United States*:

> [I]t would blink reality to ignore the disparate position of the state and the accused before trial. . . .
>
> . . . Since the Government is more able than the defendant to insure a full and fair resolution of any issue . . . at a pretrial proceeding, there is commensurately less reason to allow the prosecutor to request a reappraisal of a suppression order.

420 F.2d 1283, 1287–88 (D.C. Cir. 1969).

■ The likelihood of prejudice under the circumstances presented in this case was great. The motion to reconsider, made at a hearing on another motion just prior to jury draw, was oral. There was no presentation of grounds or new evidence. Moreover, the State had the opportunity to request reconsideration by the motions judge and appeal the pretrial suppression ruling under 13 V.S.A. § 7403. The trial court erred in reversing the original order.

■ We decline, however, to reverse on this ground because it was not raised before the trial court. In fact, while urging the trial court to adhere to the earlier ruling, defendant's counsel

conceded that "the State can bring [the suppression motion decision] up again." He argued the merits of the suppression issue, but did not suggest that reconsideration of the motion was foreclosed. In the absence of plain error we will not consider the issue for the first time on appeal. *State v. Stanislaw*, 153 Vt. 517, 528, 573 A.2d 286, 292–93 (1990).

## II.

Defendant does not contend that the Fourth Amendment to the United States Constitution protects him against warrantless electronic surveillance by a participant to a conversation with him who consents to the use of the surveillance. See *United States v. Caceres*, 440 U.S. 741, 750–51 (1979), relying on *United States v. White*, 401 U.S. 745, 751 (1971). Rather, the argument is that such surveillance is prohibited by Chapter I, Article 11, of the Vermont Constitution, which provides:

> That the people have a right to hold themselves, their houses, papers, and possessions, free from. search or seizure; and therefore warrants, without oath or affirmation first made, affording sufficient foundation for them, and whereby by any officer or messenger may be commanded or required to search suspected places, or to seize any person or persons, his, her or their property, not particularly described, are contrary to that right, and ought not to be granted.

A determination that the police activities amount to a prohibited search or seizure under Article 11 depends on whether the defendant conveyed an expectation of privacy in such a way that a reasonable person would conclude that he sought to exclude the public. *State v. Kirchoff*, 156 Vt. 1, 9–11, 587 A.2d 988, 994 (1991). As Justice Harlan stated in his concurrence in *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring), the test requirements are "first that a person ha[s] exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Kirchoff* makes it clear that privacy expectations do not necessarily decline as surveillance technology advances. *Kirchoff*, 156 Vt. at 12–13, 587 A.2d at 996. The reasonableness inquiry hinges on the essence

of underlying constitutional values—including respect for *both* private, subjective expectations and public norms.

 In assessing the constitutionality of technologically enhanced government surveillance in a particular case, we must identify the values that are at risk, and vest the reasonable-expectation-of-privacy test with those values. In the instant case, defendant's conversation with the informant took place in defendant's home, and there is no indication in the record to suggest that he expected the conversations to be transmitted beyond the immediate environs, especially not through electronic enhancement. Clearly, he did not "knowingly expose" the conversation to the outside world, and therefore exhibited a clear subjective expectation of privacy. *Katz*, 389 U.S. at 351.

The objective component of the *Katz* test was met as well. We have stated that the reasonableness analysis must be tied to identifiable constitutional values. One such value under Article 11 concerns the deeply-rooted legal and societal principle that the coveted privacy of the home should be especially protected. "[F]reedom of speech is undermined where people fear to speak unconstrainedly in what they suppose to be the privacy of home and office." *Lopez v. United States*, 373 U.S. 427, 470 (1963) (Brennan, J., dissenting). One commentator has stated:

> Although *Katz* decided that the "constitutionally protected area" test was no longer controlling, the post-*Katz* decisions have found it important to determine whether the area under surveillance has heightened privacy expectations. The sanctity of the enclosure of the home as the paradigm of constitutionally protected areas forced some courts to consider the "value model" in deciding whether the government activity was controlled by the fourth amendment.

Gutterman, *A Formulation of the Value and Means Models of the Fourth Amendment in the Age of Technologically Enhanced Surveillance*, 39 Syracuse L. Rev. 647, 724 (1988). As Justice Harlan commented in his concurring opinion in *Katz*, "a man's home is, for most purposes, a place where he expects privacy." *Katz*, 389 U.S. at 361. See also *Payton v. New York*, 445 U.S. 573, 589 (1980) (deeply rooted, subjective expectation of privacy in home).

In a case involving electronic monitoring in the home, the Supreme Judicial Court of Massachusetts stated in *Commonwealth v. Blood*:

> We consider whether society at large would think it reasonable for the defendants to expect that, in normal course, conversations held in private homes will not be broadcast and recorded surreptitiously. At common law "[i]t is certain every man has a right to keep his own sentiments, if he pleases. He has certainly a right to judge whether he will make them public, or commit them only to the sight of his friends. Yates, J., in *Millar v. Taylor*, 4 Burr. 2303, 2379 (1769)." Warren & Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193, 198 n.2 (1890).

400 Mass. 61, 68–69, 507 N.E.2d 1029, 1033 (1987).

The court in *Blood* further observed that "it is objectively reasonable to expect that conversational interchange in a private home will not be invaded surreptitiously by warrantless electronic transmission or recording." *Blood*, 400 Mass. at 70, 507 N.E.2d at 1034. Other courts have ruled that their state constitutions or privacy statutes require a warrant prior to any electronic participant monitoring. See, e.g., *State v. Glass*, 583 P.2d 872, 881 (Alaska 1978). We do not address the issues raised by participant monitoring undertaken outside of the home without a warrant, but it is significant that in *Blood* and *Glass* the surveillance activity that prompted each appeal occurred in a home.

We conclude that warrantless electronic participant monitoring conducted in a home offends the core values of Article 11. Accordingly, where the State uses an agent to enter a home for the purposes of eliciting and electronically transmitting evidence from an occupant of the home, it is the burden of the State to obtain a warrant upon probable cause prior to conducting that search.

In *State v. Zaccaro*, this Court held that a search warrant was not required under Article 11 for the introduction of evidence obtained through undercover activity, where the State proved that the officer was invited into the defendant's home in order to purchase cocaine. 154 Vt. 83, 90–91, 574 A.2d 1256, 1261 (1990). There is no conflict between the outcome in *Zaccaro* and

the result here. In *Zaccaro* the trial court excluded tape recordings taken from the body microphone which the officer wore, and the conviction did not rely on that suppressed evidence. *Zaccaro*, 154 Vt. at 85–86, 574 A.2d at 1258. Consequently, *Zaccaro* underscores the distinction at the heart of the present decision—that is, the distinction between electronically recorded evidence obtained in a suspect's home by an informant posing as a would-be drug customer and testimony from such an informant who uses only senses and memory.

In emphasizing the importance of the home as a focus of Article 11 analysis, we are not signalling a return to the formalism of *Olmstead v. United States*, 277 U.S. 438 (1928), under which the privacy right was invaded *only* by a trespass to property. On the contrary, the privacy value should be protected wherever it is unreasonably threatened, and determining what is reasonable in an age when surveillance technology is increasingly sophisticated and pervasive will continue to present difficult and complex cases. We simply hold that obtaining evidence by electronic monitoring in a defendant's home without his consent and without prior court authorization violates Article 11.

### III.

Defendant argues that the court should have granted his motion for acquittal on the obstruction of justice charge because the State failed to introduce any evidence that proceedings were pending at the time he committed the acts that served as the basis for the charge. The trial court took judicial notice that defendant's arraignment on the two drug charges being tried before the court took place on August 3, 1987, several months prior to commission of the acts. The trial court did not err, because the date of arraignment was part of the file and record of the case before it. See generally McCormick on Evidence § 330, at 927 (E. Cleary 3d ed. 1984) ("It is settled, of course, that the courts . . . take notice of their own respective records in the present litigation . . . ."); cf. *In re Estate of Leno*, 139 Vt. 554, 557, 433 A.2d 260, 262 (1981) ("It is improper for a court to take judicial notice of the files, records and judgment in a case *other than that on trial*.") (emphasis added).

We agree, however, that the verdict on the obstruction of justice charge must be reversed and remanded because the trial

court erred in admitting evidence of defendant's two prior simple assault convictions. Before trial, defendant made a motion in limine to exclude evidence of these prior convictions. The trial court granted this motion, stating that the "crimes are terribly too close to the charges here and they are not things that affect a person's reputation for truth and veracity." The trial court warned defendant that the convictions would be admissible for impeachment purposes if, for instance, he suggested that he had never been convicted of a crime.

At trial, defense counsel concluded his redirect examination of defendant by asking if he was "pretty upset with the charges?" Defendant answered affirmatively. Defense counsel then asked "Do you get upset easily?" Defendant replied: "Very. Use[d] to go to Howard Mental Health Services because I'm hyperactive." On recross examination the prosecutor proceeded as follows:

Q: You get upset easily?

A: Well, not that upset. You know how you get upset.

Q: You get angry?

A: Well, you know how we raised our voices like that.

Q: You get violent?

A: No, I don't get violent.

Q: You never get violent?

A: No, not that I can recall that great violence for getting upset. I've been in fights before.

At this point the prosecutor requested a bench conference, at which he stated his intention to question defendant on prior assault convictions. The court allowed this questioning over defendant's objections. The court instructed the jury that they could use this evidence for more than credibility:

> My recollection was that some of the testimony that was coming in through the defendant was to the effect that he was not an assaultive person by nature. That throws his character into the area of jury decision. An issue for you to decide. A factual issue. What is his character? Once he throws that in, the State is welcome to show by any evidence that that's not true. That's why these convictions came in. For the jury to engage whether or not he's a disputive type personality as well as to credibility issues.

■ Admission of prior assault convictions for the purpose of proving a "disputive type personality" is governed by V.R.E. 404(a). Evidence of a defendant's character is not admissible for the purpose of proving conduct in conformance with that character, except that evidence of a pertinent trait may be "offered by an accused, or by the prosecution to rebut the same." V.R.E. 404(a)(1). The court admitted evidence of the prior assault convictions to rebut what it perceived as defendant's offer of character evidence. The court stated during the charge conference that "defendant threw his character into the issue. . . . He brought that forward. . . . 'I'm not an assaultive person.'" Because we do not believe that defendant offered evidence of his character within the meaning of V.R.E. 404(a)(1), we conclude that the court erred.

■ Defendant's statements that he gets upset easily cannot be considered an offer of character evidence rebuttable by the State. Nor did defendant's direct denials of the questions which the prosecutor asked on recross examination constitute an offer of character evidence. As stated in 1A J. Wigmore, Evidence § 58, at 1208 n.3 (Tillers rev. ed. 1983):

> Of course, it seems plain enough that a defendant's direct denial of a question by the prosecutor that imputes bad character to the defendant does not put the defendant's character "in issue." To hold to the contrary involves an unrealistic appraisal of the defendant's options when a prosecutor in a trial asks such a question.

See also 22 C. Wright & K. Graham, Federal Practice and Procedure § 5236, at 386–87 (1978) (Fed. R. Evid. 404(a)(1) means "that the prosecution cannot elicit evidence of the defendant's good character as a foundation for its rebuttal with proof of bad character"). If the rule were interpreted otherwise, the requirement that defendant first offer character evidence would be completely illusory, because the State could always orchestrate an "offer" by asking a question calculated to elicit a negative response. This holding is in accord with case law from other jurisdictions. See, e.g., *Carson v. Polley*, 689 F.2d 562, 576 (5th Cir. 1982) (where defendant did not offer any substantial direct testimony as to his character, simple statement made on cross-examination did not constitute a sufficient offer of character evidence); *State v. Quick*, 229 Kan. 117, 120, 621 P.2d 997, 1000

(1981) ("The self-serving cross-examination by the prosecution cannot form the basis for a later claim defendant had placed his good character in issue thereby allowing that same prosecution to introduce evidence of prior crimes."); *State v. Sharich*, 297 Minn. 19, 23, 209 N.W.2d 907, 911 (1973) ("A general denial by the defendant that he did a particular kind of act is insufficient to put his character into issue.").

This holding is also consistent with our opinion in *State v. Parker*, where we found the defendant's unsolicited response on cross-examination that "I am not perverted" sufficient to open the door to rebuttal character evidence. 149 Vt. 393, 403, 545 A.2d 512, 518 (1988). A defendant, through answers on cross-examination, can offer evidence of his character within the meaning of V.R.E. 404(a)(1). See *State v. Austad*, 197 Mont. 70, 88–89, 641 P.2d 1373, 1383 (1982) (defendant's answers on cross-examination which went beyond the scope of question asked were sufficient to open the door to prosecution's rebuttal evidence). Defendant's direct denials on cross-examination of questions that impute bad character are not a sufficient "offer" within the meaning of the rule.

█ We cannot conclude that this error was harmless. The State's evidence consisted solely of the informant's testimony that defendant struck him, and photographs of the informant's injuries. The informant testified that he was with one of the "Hatin brothers" at the time of the alleged incident, yet the State failed to identify which brother and, consequently, did not introduce any eyewitnesses to corroborate the informant's testimony. Defendant denied that the incident occurred, calling two of the Hatin brothers who had been contacted by the police, both of whom denied knowledge of the incident. On these facts, admission of evidence of the two prior assault convictions was not harmless.

*Reversed and remanded.*

**Morse, J.,** concurring. I concur with all three parts of the Court's opinion, but I concur with the result in Part II based on the reasoning found in my dissent in *State v. Brooks*, 157 Vt. 490, 601 A.2d 963 (1991).

**Peck, J.,** dissents.