NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 65

No. 2015-269

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Criminal Division |
| | |
| Amy Koenig | February Term, 2016 |

Theresa S. DiMauro, J.

David J. Cahill, Windsor County State's Attorney, and Glenn Barnes, Deputy State's Attorney, White River Junction, for Plaintiff-Appellee.

Brian R. Marsicovetere and Robert D. Lees of Marsicovetere Law Group, P.C., White River Junction, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.    **EATON, J.**   Defendant appeals the denial of her motion to suppress evidence that ultimately led to her driving-under-the-influence (DUI) processing. We affirm.

¶ 2.    On January 22, 2014 at about 6:30 p.m., the Vermont State Police received a tip from an identified caller about the erratic operation of a motor vehicle in the Town of Bethel. The caller provided the vehicle's license plate number, which the State Police used to identify the registered owner and her address. The arresting trooper parked on South Main Street in front of the listed address, at which there was a single story structure. To the right of the main building the trooper observed an attached structure covered by a roof and enclosed on three

sides. The fourth side of the structure, the one which faced the street, had two large open doorways framed in the size and shape of garage doors, but without any actual doors, such that the interior of the structure was open at all times to plain view from the street. The trooper did not observe any signs or placards against trespassing or entry to the attached structure, or to any other area of the property.

¶ 3. From where he was parked, the trooper saw the suspect vehicle parked inside the left bay of the attached structure. He also saw two entryways to the building: one along the shared wall inside the attached structure, and one on the left side of the front of the building. The trooper saw an illuminated paved walkway with a railing leading to the entryway on the left side of the building. He also saw two signs for a business, Paini Monuments, one at either end of the walkway: at the end closest to the street, a large sign reading "Paini Monuments Established 1959" with a telephone number hung from a signpost, and above the door to the entryway, a smaller sign, also related to the business, was suspended from the left-hand front-corner of the building's roof. When asked if he thought the entryway on the left side of the building was a business entrance, the trooper stated that he could not "say one hundred percent if it is or is not." It was his belief that the door inside the attached structure to the right of the building provided access to the residence.

¶ 4. The trooper exited his vehicle and approached the entryway inside the attached structure. As he entered the left bay of the attached structure, walking with the suspect vehicle on his right and the shared wall of the attached structure and the building on his left, he saw damage to the driver's side mirror and front-left fender of the car involved in the report. As he neared the entryway, defendant was readily observable through the glass of the doorway. Defendant opened the door and identified herself. The trooper subsequently conducted field sobriety tests and administered a preliminary breath test. Defendant was arrested on suspicion of

operating a motor vehicle on a public highway while under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201(a)(2).

¶ 5. On June 1, 2014, defendant was arraigned on a one count information alleging a violation of 23 V.S.A. § 1201(a)(2) for operating a motor vehicle on a public highway while under the influence of intoxicating liquor. Defendant timely requested a civil suspension hearing.

¶ 6. On June 11, 2014, defendant filed a motion to suppress in the criminal and civil cases, and a motion to dismiss in the civil case. The trial court granted the motion to dismiss, and ordered a motion hearing on the suppression issue. At the motion hearing, defendant sought to suppress evidence obtained and observed by the trooper as he walked through the attached structure. She argued that the trooper conducted an illegal warrantless search within the curtilage of her home when he entered the attached structure, in violation of the Fourth Amendment of the U.S. Constitution and Chapter I, Article 11 of the Vermont Constitution. The State opposed defendant's motion, asserting that constitutional protections are not absolutely extended to the curtilage. The trial court declined to address whether the curtilage is afforded the same protection as a residence. On the facts established above, the trial court denied defendant's motion to suppress, finding that a reasonable person could conclude that the entryway on the left side of the building was a business entrance; that a reasonable person would consider the entryway inside the attached structure to be a point of normal public access; and that defendant did not have a reasonable expectation of privacy in the interior of the attached structure, which it characterized as a carport. Defendant appeals.

¶ 7. "A motion to suppress evidence presents a mixed question of fact and law." State v. Bauder, 2007 VT 16, ¶ 9, 181 Vt. 392, 924 A.2d 38. "On appeal from a denial of a motion to suppress, we review the trial court's findings of facts deferentially and reverse only if the

3

findings are clearly erroneous." State v. Ford, 2010 VT 39, ¶ 7, 188 Vt. 17, 998 A.2d 684 (citing State v. Bryant, 2008 VT 39, ¶ 9, 183 Vt. 355, 950 A.2d 467). "Under this standard, 'we will uphold the [trial] court's factual findings unless, taking the evidence in the light most favorable to the prevailing party, and excluding the effect of modifying evidence, there is no reasonable or credible evidence to support them.' " Id. (quoting State v. Rheaume, 2005 VT 106, ¶ 6, 179 Vt. 39, 889 A.2d 711). Whether the facts as found meet the proper standard justifying a particular police action is a question of law. State v. Mara, 2009 VT 96A, ¶ 6, 186 Vt. 389, 987 A.2d 939. We review de novo the trial court's legal conclusion—or "constitutional fact"—as to whether the trial court's findings establish a reasonable expectation of privacy sufficient to afford protections under the Fourth Amendment and Article 11. State v. Sprague, 2003 VT 30, ¶ 24, 175 Vt. 123, 824 A.2d 539.

¶ 8. Defendant challenges the trial court's factual findings and legal conclusion, arguing that the court: (1) erred when it found that the attached structure was a carport, rather than a garage; and (2) incorrectly concluded that the trooper lawfully entered the curtilage of her home for a "knock and talk," because the entryway inside the attached structure was not a normal access route for anyone visiting the residence.

¶ 9. Defendant's first challenge is not to a finding of fact so much as to the trial court's terminology. Defendant challenges the trial court's description of the attached structure as a carport, rather than as a garage. She argues that Merriam-Webster defines carport as "a shelter for a car that has open sides and that is usually attached to the side of a building," whereas the evidence at trial demonstrates that the attached structure, although a shelter for a car attached to the side of a building, was enclosed on three sides. For this reason, defendant argues that the trial court should have described the structure as a garage, defined as "a building or part of a building in which a car, truck, etc. is kept." The State, borrowing from Shakespeare, asks

4

"what's in a name?" William Shakespeare, Romeo and Juliet act 2, sc. 2 ("That which we call a rose by any other name would smell as sweet."). More specifically, the State asserts that the distinction is irrelevant because defendant's expectation of privacy does not depend on whether the trial court describes the structure as a carport or a garage, but rather on the nature of the structure itself.

¶ 10. Defendant makes a reasonable, if immaterial, argument. Because neither the trial court's factual findings nor its legal conclusions depended in any way on whether the structure was a garage or a carport, the trial court's description of the structure had no legal significance. Neither "carport" nor "garage" are terms of art under Fourth Amendment law, and neither has a technical or specialized meaning in this context. See Black's Law Dictionary 1483 (7th ed. 1999) (defining term of art as "a word or phrase having a specific, precise meaning in a given specialty, apart from its general meaning in ordinary contexts."). The description of the structure as a carport, or as a garage, will not affect application of Fourth Amendment and Article 11 principles. For this reason, there was no error in the trial court's general description of the structure as a carport, or its intermittent description of the structure as a garage.[1]

¶ 11. Defendant's central argument on appeal is that the trooper's entrance into the attached structure and the resulting discovery of the damage to her vehicle constituted a warrantless search of the curtilage of her home in violation of the Fourth Amendment of the U.S. Constitution and Article 11 of the Vermont Constitution. Defendant contends that the trooper conducted an investigative stop in an area in which she had an expectation of privacy by

---

[1] We note that even if the use of a specific descriptor bore on the trial court's legal findings, our review of the trial court's factual findings is deferential. We reverse only if they are clearly erroneous. Based on photographs included in the printed case and stipulated to at trial by both parties, the trial court's classification of the attached structure was not clearly erroneous. As depicted in those images, the structure is enclosed on three sides, with the fourth side, which faces the street, completely open to the public. Some may call this a carport, while others may call it a garage—we would not consider either description to be clearly erroneous.

approaching the residence through the attached structure, which was not a means of public access to the residence, and that a reasonable visitor would understand that the illuminated entranceway marked by a walkway was the normal access route. The State disagrees and argues the trooper's entry into the structure did not violate the Fourth Amendment or Article 11 because defendant had no reasonable expectation of privacy in the interior of the structure, which was visible from the street and access to which was not limited by signs or physical objects. The State further contends that a reasonable person would consider the entryway inside the structure to be a means of public access and the entryway marked by signs to be a business entrance.

¶ 12. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is the basic purpose of the Fourth Amendment "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Camara v. Mun. Ct. of S.F., 387 U.S. 523, 528 (1967). Never is the Fourth Amendment "zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." Payton v. New York, 445 U.S. 573, 589 (1980). Article 11 of the Vermont Constitution likewise "protects the people's right to be free from unreasonable government intrusions into legitimate expectations of privacy." Bryant, 2008 VT 39, ¶ 10 (quotation omitted).[2] Article 11 protects "areas or activities," State v. Geraw, 173 Vt. 350, 352, 795 A.2d 1219, 1221 (2002), that are the subject of " 'legitimate expectations of privacy.' " Rheaume, 2005 VT 106, ¶ 8 (quoting State v. Welch, 160 Vt. 70, 76, 624 A.2d 1105, 1108 (1992)). As differentiated by this Court in

---

[2] Article 11 states:

> That the people have a right to hold themselves, their houses, papers, and possessions, free from search or seizure; and therefore warrants, without oath or affirmation first made, affording sufficient foundation for them, and whereby by any officer or messenger may be commanded or required to search suspected places, or to seize any person or persons, his, her or their property, not particularly described, are contrary to that right, and ought not to be granted.

Vt. Const. ch. I, art. 11.

State v. Kirchoff, 156 Vt. 1, 4, 587 A.2d 988, 991 (1991), "the Fourth Amendment guarantees freedom from 'unreasonable searches and seizures'; Article [11 by contrast does not contain the word 'unreasonable.' We have held, however, that '[r]egardless of this difference, . . . the word "unreasonable" is as implicit in Article Eleven as it is express in the Fourth Amendment.' " Id. (quoting State v. Record, 150 Vt. 84, 85, 548 A.2d 422, 423 (1988) (alteration in original)).

¶ 13. This Court has previously noted the "significance of the home as a repository of heightened privacy expectations" and deemed heightened expectations in the privacy of one's home to be legitimate. Geraw, 173 Vt. at 352-53, 795 A.2d at 1221; see also State v. Blow, 157 Vt. 513, 518, 602 A.2d 552, 555 (1991). Although there has been some disagreement among the members of the Court in the past as to the extent to which circumstances may alter the general rule, see Geraw, 173 Vt. at 364-68, 795 A.2d at 1229-33 (Skoglund, J., dissenting) (reasoning that because defendant had no legitimate expectation of privacy in consensual conversation with known police officer in defendant's home, officer's surreptitious recording of conversation was not search), government intrusions into the home are searches for purposes of Article 11 even if an individual fails to take affirmative steps to convey his expectation of privacy. See Blow, 157 Vt. at 519, 602 A.2d at 556 (holding that police's warrantless recording of conversation between confidential informant and defendant in defendant's home violated Article 11). A home's curtilage—the "area outside the physical confines of a house into which the 'privacies of life' may extend"—merits "the same constitutional protection from unreasonable searches and seizures as the home itself." State v. Rogers, 161 Vt. 236, 241, 638 A.2d 569, 572 (1993) (quoting Oliver v. United States, 466 U.S. 170, 180 (1984)).

¶ 14. We note, however, that neither the Fourth Amendment nor Article 11 confer absolute protection against government intrusion. The Fourth Amendment "does not protect the merely subjective expectation of privacy, but only those expectations that society is prepared to

7

recognize as reasonable." State v. Byrne, 149 Vt. 224, 227, 542 A.2d 276, 278 (1988) (quotation and alteration omitted). Likewise, "a person cannot rely on Article11 to protect areas or activities that have been willingly exposed to the public." Kirchoff, 156 Vt. at 7, 587 A.2d at 993. Whether an individual has a legitimate expectation of privacy under Article 11 "hinges on the essence of underlying constitutional values—including respect for both private, subjective expectations and public norms." Blow, 157 Vt. at 517–18, 602 A.2d at 555. To invoke Article 11 protection, a person must " 'exhibit[ ] an actual (subjective) expectation of privacy . . . that society is prepared to recognize as reasonable.' " Id. (quoting Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) (internal quotation marks omitted)). "Our focus must be on the objective reasonableness of one's privacy interest." State v. Morris, 165 Vt. 111, 120, 680 A.2d 90, 96 (1996).

¶ 15. Fourth Amendment protections therefore extend only to items which are not in plain view and may be not seen by persons from a place they have a legitimate right to be. United States v. Orozco, 590 F.2d 789, 792 (9th Cir. 1979). Article 11 protections extend only to areas where individuals have "conveyed an expectation of privacy in such a way that a reasonable person would conclude that he sought to exclude the public." Blow, 157 Vt. at 517, 602 A.2d at 555. Where the government observes that which is willingly exposed to the public, there is no invasion of privacy—and therefore no search. See Kirchoff, 156 Vt. at 10, 587 A.2d at 994. We have held that an individual must take affirmative steps to protect her privacy in her curtilage. See, e.g., State v. Hall, 168 Vt. 327, 331, 719 A.2d 435, 438 (1998) (holding that officer's monitoring of defendant's curtilage from wooden area bordering yard was not Article 11 search where defendant took no steps to prevent public from entering wooded area to reach curtilage or to prevent view of curtilage from wooded area); Rogers, 161 Vt. at 248-49, 638 A.2d at 576–77 (same). Fences, gates, and no-trespassing signs generally suffice to apprise a person

that the area is private.  Kirchoff, 156 Vt. at 10, 587 A.2d at 994.  Only where the government intrudes into areas of the curtilage a reasonable person would expect to be private does it conduct a search.  Id.

¶ 16.  A knock-and-talk, where a police officer approaches a residence to knock on the door, or otherwise approaches the residence seeking to speak to the inhabitants, is also an exception to the protections against warrantless searches.  See State v. Ryea, 153 Vt. 451, 453, 571 A.2d 674, 675 (1990) (holding Fourth Amendment does not absolutely protect curtilage; therefore police officer could conduct investigative stop in residential driveway of person suspected of driving with suspended license); Byrne, 149 Vt. at 228, 542 A.2d at 278-79 (concluding that state officials could investigate game violation from steps and walkway of home); see also Rogers v. Pendleton, 249 F.3d 279, 289 (4th Cir. 2001) (explaining that police, like private citizens, may approach home absent contrary evidence from owner).  It is well-established that police officers are entitled to enter residential property, including portions that would be considered part of the curtilage, to carry out legitimate police business.  1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 2.3(f), at 782-87 (5th ed. 2012) (citing numerous cases and concluding that "when the police come on to private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g. walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment").  "This is because a portion of the curtilage, being the normal route of access for anyone visiting the premises, is only a semi-private area."  Id. at 781 (quotations omitted).

¶ 17.  In carrying out their duties during a knock-and-talk, the police are limited to the areas where the public would be expected to go.  See id. at 752 ("Thus, courts have held that police with legitimate business may enter areas of the curtilage which are impliedly open to use

9

by the public" (quotations omitted)); see also United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006) ("The Fourth Amendment, which prohibits unreasonable searches and seizures by the government, is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises. . . [O]fficers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just an [sic] any private citizen may." (citation and quotation omitted)); State v. Duhart, 810 So. 2d 972, 973-74 (Fla. Dist. Ct. App. 2002) (holding that there was no reasonable expectation of privacy in attached carport (initially referred to as garage) which is open and exposed to public, comparing situation to defendant's front porch where delivery men were free to go); Florida v. Detlefson, 335 So. 2d 371, 372 (Fla. Dist. Ct. App. 1976) ("It cannot be said the defendant had a reasonable expectation of privacy in the front porch of his home where, presumably, delivery men and others were free to observe the plants thereon."); Tracht v. Comm'r of Pub. Safety, 592 N.W.2d 863, 865 (Minn. Ct. App. 1999) ("Police with legitimate business may enter the areas of curtilage which are impliedly open to use by the public." (quotation and alteration omitted)). This includes the driveway, steps, and walkway, which may fall within the curtilage, and which constitute a semiprivate area serving as the normal access route for anyone visiting the premises. State v. Pike, 143 Vt. 283, 287, 465 A.2d 1348, 1351 (1983) (concluding that driveway, as portion of curtilage which is normal route of access for anyone visiting premises, is semiprivate area); see also Byrne, 149 Vt. at 228, 542 A.2d at 278-79 (steps and walkway immediately proximate to home comprise a semiprivate area).

¶ 18.   As with the plain-view exception generally, "[a]bsent evidence of intent to exclude the public, the entryway to a person's house offers implied permission to approach and knock on the front door." People v. Kozlowski, 505 N.E.2d 611, 612 (N.Y. 1987). In Edens v. Kennedy, the Fourth Circuit held that "[w]hen such intent [to exclude uninvited visitors] would

10

be apparent to a reasonable officer, the police may not enter the enclosed area without a warrant or exigent circumstances." 112 F. App'x 870, 876 (4th Cir. 2004). Such an intent to exclude may be apparent if, for example, locked gates and "No Trespassing" signs surrounded the curtilage. See id. at 875; see also Madruga v. Cnty. of Riverside, 431 F. Supp. 2d 1049, 1059-64 (C.D. Cal. 2005); Robinson v. Commonwealth, 625 S.E.2d 651, 658 (Va. Ct. App. 2006); State v. Ridgeway, 790 P.2d 1263, 1265 (Wash. Ct. App. 1990). Thus, where a homeowner takes measures to impede or block access to the curtilage, these privacy enhancements prevent police access in a knock-and-talk. See State v. Somfleth, 8 P.3d 221, 227 (Or. Ct. App. 2000) ("A homeowner can abrogate the presumption of implied consent to approach the front door by undertaking sufficient steps to exclude casual visitors from the front yard.").

¶ 19. In State v. Elkins, this Court adopted the reasoning in Kozlowski. 155 Vt. 9, 14, 580 A.2d 1200, 1203 (1990) (citing Pike, 143 Vt. at 287–88, 465 A.2d at 1351 (finding that front porch is part of normal route of access for anyone visiting premises)); State v. Sanders, 374 So. 2d 1186, 1189 (La. 1979) ("It is an almost implicit understanding and custom in this country that, in the absence of signs or warning, a residence may be approached and the occupants summoned to the door by knocking."). In Kozlowski, a police officer investigating a reported traffic incident walked onto the defendant's porch and opened the screen door to conduct a knock-and-talk. The officer readily observed the symptoms of intoxication and placed the defendant under arrest after he admitted he had been drinking and had been involved in the reported accident. The New York Court of Appeals explained that the officer reached the "defendant's front door by the means defendant had made available for public access to his house, and did not intrude into any area in which defendant had a legitimate expectation of privacy." 505 N.E.2d at 612. The court continued, concluding that "[a]bsent evidence of intent to exclude the public, the entryway to a person's house offers implied permission to approach

11

and knock on the front door," and therefore, the police could utilize such a point of access for the purpose of making inquiry. Id. at 612.

¶ 20. Although people's expectations for access areas of their premises commonly differ from their expectations for more secluded areas, in the course of urban life, members of the public, including neighbors, friends, postal workers, newspaper deliverers, and salespeople, commonly approach doorways that are the obvious points to gain access to the living quarters. State v. Corbett, 516 P.2d 487, 490 (Or. Ct. App. 1973) ("In the course of urban life, we have come to expect various members of the public to enter upon such a driveway."). The facts sufficient to justify a knock-and-talk need be no more than an objective circumstance that would cause a reasonable person to believe that the entryway to the left was a business entrance, and that the entryway inside the attached structure was a normal point of access to the residence.

¶ 21. Applying this standard to the facts of this case, we conclude the record evidence was sufficient to establish a reasonable, objective basis for the trooper's belief that the entryway to the left was a business entrance, and that the remaining visible entryway was a normal point of public access to the residence. The entrance on the left was at the end of an illuminated, paved walkway with a railing, at each end of which there was a sign for Paini Monuments. The entrance inside the attached structure was visible from the street. Although the trooper conceded that he was not one hundred percent certain the entrance to the left was a business entrance, it was not unreasonable for him to conclude as much. Making it even more reasonable is the fact that the trooper's dealings at defendant's property had nothing to do with Paini Monuments. It therefore follows that it was not unreasonable for him to conclude that the other entrance in the attached structure, visible from the street, provided public access to the residence.

¶ 22. We therefore conclude that the trooper's conduct was reasonable and not in violation of the Fourth Amendment or Article 11. This is not to suggest that a warrantless entry

12

into an attached structure without doors is always constitutionally permissible, a question we do not reach here. The warrantless entry into this structure was permissible because it was reasonable under these facts for the officer to conclude the doorway inside the structure was an entrance for the public to use to access the home. See, e.g., <u>Trach</u>, 592 N.W.2d at 865 (finding officers' entry through open garage door to conduct knock-and-talk at service door no different than entering porch to knock on door to house and thus not in violation of Fourth Amendment).

<u>Affirmed</u>.

FOR THE COURT:

_____
Associate Justice