NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 19

No. 22-AP-131

| State of Vermont | Supreme Court |
|---|---|
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| Devan Calabrese | November Term, 2022 |

John R. Treadwell, J.

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Allison N. Fulcher of Martin, Delaney & Ricci Law Group, Barre, for Defendant-Appellant.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.     **COHEN, J.**  Defendant appeals from the criminal division's denial of his motion to suppress evidence of a cartridge found at his girlfriend's house following a remand from this Court. He argues the trial court exceeded the scope of the remand in State v. Calabrese (Calabrese I), 2021 VT 76A, __ Vt. __, 268 A.3d 565, by finding that the search did not occur within the curtilage of the home, and that the evidence does not support the court's findings that, even if within the curtilage, the trooper's search did not exceed the trooper's license to enter the property to conduct a welfare check. We affirm.

I. Facts and Procedural History

¶ 2.     A more detailed background of this case is provided in Calabrese I. Defendant was charged in September 2019 with felony aggravated assault with a deadly weapon and three related

misdemeanors following an altercation on the front lawn of defendant's girlfriend's house where he allegedly threatened three individuals with a handgun. A couple of days after the incident, Vermont State Police Trooper Waitekus responded to a request for a welfare check and went to girlfriend's house. While there, he located a cartridge in the area where the altercation happened. Prior to trial, defendant moved to suppress evidence related to the found cartridge, arguing that the trooper violated his rights under Article 11 of the Vermont Constitution by conducting a warrantless search on girlfriend's property. The criminal division denied the motion, concluding that the area where the bullet was found was a semiprivate space and not entitled to constitutional protection. Following a jury trial, defendant was found guilty of aggravated assault with a deadly weapon and two related misdemeanors. Defendant appealed.

¶ 3.     In the first appeal, among other things, defendant argued that the trooper's search and seizure of the cartridge was unlawful because it occurred in an area that was subject to constitutional protection and the trooper exceeded his license to be on the property. This Court concluded that the criminal division applied the incorrect legal standard in analyzing defendant's motion to suppress, explaining that the curtilage of a home is protected by Article 11 and the Fourth Amendment, "[a]n officer may only intrude into a constitutionally protected area subject to an express or implied license, and the officer's observational activities within that protected area are limited by the scope of that license." Id. ¶ 27. The Court acknowledged that law enforcement may have an express or implied license to make a warrantless entry into the protected area around a home, but "if an officer exceeds the scope of a limited license by undertaking a search within a constitutionally protected area without a warrant, evidence observed in the context of the officer's exceeding the license does not fall under the plain-view exception." Id. ¶ 28. Because the criminal division utilized the wrong legal standard, it did not make the findings necessary to evaluate the pertinent legal question. We explained that the criminal division "did not make findings regarding the trooper's conduct and whether and how it fit within the scope of his limited license to enter the

2

property." Id. ¶ 29. Therefore, we remanded "for the trial court to make findings of fact concerning the trooper's conduct surrounding his location of the incriminating evidence." Id. ¶ 33.

¶ 4. On remand, the trial court made the following findings based on the evidence previously submitted at the November 2019 suppression hearing. Girlfriend's property contains a single-family home facing the street. There are no signs or fences on the property restricting access. There is a thirty-foot driveway leading to a garage door. The driveway, lawn, and door are all visible from the street without any obstruction. On the day of the incident, in response to reports of the altercation, Trooper Waitekus met with the witnesses, and one indicated that defendant had "racked the slide" on a handgun while standing in the driveway, causing the handgun to eject a cartridge. Trooper Waitekus went to girlfriend's property with two other Vermont State Troopers to look for defendant. They spoke to girlfriend and she allowed them to look around. At the time, police did not have detailed information about where the altercation occurred. Trooper Waitekus did not recall whether police searched for the cartridge at that time. The following day, Trooper Waitekus received specific information about where the incident occurred in the driveway.

¶ 5. Two days after the incident, girlfriend's neighbor contacted police and requested a welfare check because he had not seen girlfriend for a couple of days. Trooper Waitekus contacted girlfriend's father, with whom he was acquainted, and father, who did not know his daughter's whereabouts, offered to meet at girlfriend's house. Girlfriend's father and Trooper Waitekus drove separately to girlfriend's property and parked side-by-side in girlfriend's driveway. Trooper Waitekus and girlfriend's father knocked repeatedly on girlfriend's front door and announced themselves, but there was no answer. Girlfriend's father opened the garage door, which was unlocked, and he and Trooper Waitekus entered the home. They did not locate girlfriend following a search of the home and left a note on her door asking her to contact Trooper Waitekus.

¶ 6.    As they walked back to their cars, Trooper Waitekus remembered that the alleged incident with the handgun had occurred in girlfriend's driveway at about the midpoint of the driveway, near where the open door to his cruiser now happened to be.  He was speaking to girlfriend's father when he looked down and saw the cartridge on the ground.  Trooper Waitekus "did not move any leaves or grass to see the cartridge" because "it was visible to him with his flashlight from where he was standing approximately four feet from the open door to his police cruiser."  Trooper Waitekus took a photograph of the cartridge and seized it as evidence.

¶ 7.    The criminal division denied the motion to suppress on two independent, alternative bases.  First, the trial court concluded that Trooper Waitekus was not within the curtilage of girlfriend's home when he found the cartridge and that he therefore did not need a search warrant to search for and seize the cartridge under Article 11 of the Vermont Constitution.  Alternatively, the criminal division concluded that, even if the entire driveway was within the curtilage, Trooper Waitekus' conduct fell within the limited license he had to enter the property for the welfare check. The criminal division emphasized the manner in which the trooper discovered the cartridge.  The trooper did not get on his hands and knees to search the area, did not scrutinize the entire driveway, and did not spend a significant amount of time looking around.  Rather, the trooper looked down while at his car door, and saw the cartridge on the ground.  Therefore, the criminal division again denied defendant's motion to suppress.  Defendant appeals.

II.  Analysis

¶ 8.    On appeal, defendant challenges both grounds for denying his motion to suppress. First, defendant argues that the criminal division erred in concluding that Trooper Waitekus was not within the curtilage when he found and seized the cartridge.  Defendant asserts that in his first appeal this Court conclusively determined that Trooper Waitekus was within the curtilage when he found the cartridge, the matter was not remanded, and that fact is now the law of the case. Second, defendant claims that the evidence does not support the court's findings that, even if

4

Trooper Waitekus was within curtilage, his actions did not exceed the scope of the license he had to be on the property.

¶ 9. We affirm the court's decision that, even assuming that Trooper Waitekus was within the curtilage of girlfriend's house when he found the cartridge, he did not exceed the scope of his license to be on the property. Therefore, we do not reach the question of whether the factual question of the curtilage was already decided in the first appeal and therefore the law of the case.

¶ 10. "The denial of a motion to suppress involves a mixed question of fact and law." Calabrese I, 2021 VT 76A, ¶ 19. We "accept the trial court's findings of fact unless they are clearly erroneous," but we review without deference "the question of whether the facts meet the proper legal standard." Id.

¶ 11. The parties do not dispute the relevant legal standard. The Fourth Amendment and Article 11 protect individuals' "right to be free from unreasonable government intrusions into legitimate expectations of privacy." State v. Koenig, 2016 VT 65, ¶ 12, 202 Vt. 243, 148 A.3d 977 (quotation omitted). The home has "heightened expectations" of privacy and therefore government intrusions into the home are searches "even if an individual fails to take affirmative steps to convey his expectation of privacy." Id. ¶ 13. The curtilage—the space around the home "into which the privacies of life may extend"—has the same protection against unreasonable searches and seizures. Id. (quotation omitted).

¶ 12. The protections of both the Fourth Amendment and Article 11 are not absolute, however, and do not extend to items "in plain view" or "seen by persons from a place they have a legitimate right to be." Id. ¶¶ 14-15. In Calabrese I, we explained that under the plain-view doctrine, police may seize an object if it is viewed from a legal vantage point and they have "a lawful right of access to the object." 2021 VT 67A, ¶ 21. Further, "in some cases government agents may be entitled to enter private property without a warrant to conduct legitimate government business pursuant to an implied or explicit license." Id. ¶ 22. We underscored,

5

however, that the plain-view doctrine "does not operate in the same way once an officer enters the private property surrounding a home without a warrant." Id. ¶ 23. The officer's actions continue to be limited by the scope of the license to be there. Id. ¶ 24.

¶ 13. Our remand instructed the trial court to make findings "concerning the trooper's conduct surrounding his location of the incriminating evidence." Id. ¶ 33. Pursuant to that instruction, the trial court made detailed findings concerning Trooper Waitekus's actions at girlfriend's home. Those findings included the following: Trooper Waitekus and girlfriend's father parked in the driveway; after conducting a welfare check in the home, they returned to their vehicles; they spoke briefly about the alleged altercation a couple of days before; Trooper Waitekus looked down and observed the cartridge illuminated by his flashlight; Trooper Waitekus did not engage in a search of girlfriend's driveway or lawn.

¶ 14. Defendant argues that these findings are not supported by the testimony of Trooper Waitekus or girlfriend's father. Defendant asserts that the testimony indicates that Trooper Waitekus was specifically looking for the cartridge when he stopped by his car and shone his light in the grass.

¶ 15. We apply a deferential standard of review to the trial court's factual findings related to a motion to suppress. State v. Lawrence, 2003 VT 68, ¶ 8, 175 Vt. 600, 834 A.2d 10 (mem.). This "is appropriate because determining the weight of evidence and credibility of witnesses is primarily for the trier of fact." Id.

¶ 16. The evidence supports the trial court's findings in this case. Girlfriend's father provided an account of the visit to his daughter's house for the welfare check. He testified that after he and the trooper left the house, they were walking back out to the driveway and discussing "what went down" right there on the driveway. Then, the trooper said, "Don't move," and indicated that he would get a camera. Girlfriend's father stated that the trooper was startled to discover the cartridge. Girlfriend's father also indicated that the trooper did not actively go into

6

the grass to search. The trooper similarly testified that he was looking down as the two were talking and walking back to their vehicles. The trooper stated that he was thinking about the fact that the incident had occurred at that location. He then looked down and spotted the cartridge. He was about halfway between the house and road and was on the edge of the driveway. In answer to whether he did "anything before being able to see the cartridge" or did "anything in the nature of a search in that area," the trooper indicated that he did nothing "other than look down." The trooper testified that he retrieved his camera from the cruiser and took a photograph before placing the cartridge in an evidence bag. The court admitted photographs that the trooper took of the cartridge visible in the lawn without objection.

¶ 17. The trial court acted within its discretion in crediting the testimony of girlfriend's father and Trooper Waitekus regarding how the cartridge was discovered and their testimony supports the court's following findings. The trooper did not actively search for the cartridge but found it when he was looking down as he returned along the usual path to his vehicle. The trooper did not "scrutinize the margins of the entire length of the driveway," or "spend significant time looking around to see if the cartridge was visible." Although the trooper had a flashlight, the trooper used the flashlight to illuminate his path, not to actively search the area for the cartridge. This Court's role is not to reweigh the evidence on appeal. See State v. Huston, 2020 VT 46, ¶ 10, 212 Vt. 363, 236 A.3d 1291 ("Determining credibility of witnesses and the weight of the evidence is within the sound discretion of the trial judge.").

¶ 18. These findings support the legal conclusions that the trooper's conduct was objectively reasonable and the trooper's actions were within the limited license that he had to enter the property to conduct a welfare check. See Florida v. Jardines, 569 U.S. 1, 10 (2013) (explaining that search or seizure may exceed scope of license to enter property if "behavior objectively reveals a purpose to conduct a search"); Calabrese I, 2021 VT 76A, ¶ 31 (explaining that actively searching for cartridge not "intrinsic to the welfare check that gave [the trooper] limited

7

constitutional authority to be present in the curtilage of the home in the first place").  Therefore, the court properly denied defendant's motion to suppress.

Affirmed.

FOR THE COURT:

_____

Associate Justice